**DAOUD A. HAMDALLAH a/k/a DAVID A. HAMDALLAH,**
**Appellant**

**v.**

**DIANE TRACE WARLICK, ESQUIRE, INDIVIDUALLY and**
**WARLICK & QUIGLEY, P.C., Appellees**

D.C. Civ. App. No. 1994-108

T.C. Civ. No. 470-1993

District Court of the Virgin Islands

Div. of St. Croix

August 8, 1996

RONALD E. RUSSELL, ESQ., St. Croix, U.S.V.I., *for Appellant*

DIANE TRACE WARLICK, ESQ., St. Croix, U.S.V.I., *for Appellees*

BEFORE: MOORE, *Chief Judge*, FINCH and MEYERS, *Judges*

## OPINION OF THE COURT

PER CURIAM

We address on appeal the question of whether the Territorial Court, in an attorney's fees matter, erred by finding an implied contract but at the same time making award on a *quantum meruit* basis. For the reasons stated herein, we affirm the lower court's finding of an implied contract and award of fees to the appellees.

## FACTUAL BACKGROUND

This appeal is from a judgment dated June 9, 1994, in favor of appellees Warlick and Warlick & Quigley, P.C. [collectively, "Warlick"]. It grows out of appellees' representation of, and subsequent action for debt against, appellant Hamdallah in a medical licensure suit before the District Court of the Virgin Islands.[1]

Testimony at trial showed that, under the terms of the original billing arrangement drawn up in October 1988, Warlick would bill Hamdallah on an hourly basis with payment due upon request;[2] payment in full on any outstanding balance would be due at the conclusion of the case. Appendix ["App."] at 36. The original copy of the written retainer agreement was destroyed during Hurricane Hugo's interlude on St. Croix in September 1989, but the suit and the parties' professional relationship continued.

Both Warlick and Warlick's present partner, Felice Quigley, testified that this fee agreement changed when Quigley began working for Warlick in November 1990. Attorney Quigley was admitted *pro hac vice* to the Virgin Islands Bar to take over Hamdallah's representation in the District Court matter, and insisted that Hamdallah make a minimum retainer payment of five hundred dollars ($500) per month. Warlick essentially shared representation of Hamdallah with Quigley from this point, and the previous balance owed her individually stood beside the growing balance owed Warlick & Quigley, P.C.

---

[1] *Hamdallah v. Government of the Virgin Islands, Department of Health,* D.C. Civ. No. 1988-386, an action still pending at this time in the District Court.

[2] Warlick testified that her hourly billing rate was one hundred twenty-five ($125) dollars an hour. Appendix ["App."] at 36.

Hamdallah testified that he never agreed to make these monthly payments, and no written agreement to that effect was ever drafted or signed by him. However, between February 1991 and August 1992 Hamdallah made intermittent payments ranging from three hundred ($300) to two thousand ($2000) dollars in response to demands by Warlick. App. at 313-19, 328-33. At trial, Warlick presented correspondence referring to discussions of this "agreement" dated March 1991, December 1992, and February 1993, as well as copies of demands for payment of the monthly retainer dating from March 1991 to November 1992. App. at 287-98, 279-84.

Hamdallah did not dispute that he owes Warlick for their representation of him in the District Court suit. Rather, he asserted that Warlick's hourly rate was ninety-five dollars ($95) an hour and that, as the original fee agreement called for payment of any outstanding balance at the conclusion of the District Court case, no payments were due until that case ended. App. at 192.

At trial on March 3, 1994, the judge recited that an attorney giving ordinary care and diligence to a case is entitled to compensation, and "has a right to recover by suit for compensation for services, either under [the terms of] an express contract or on a *quantum meruit* basis." App. at 338. The trial court found that, after the express contract was destroyed, an implied contract had been formed, that there was performance by the Warlick attorneys, and that the attorneys had not been not paid; therefore, Warlick could recover on a *quantum meruit* basis.[3] The court concluded that appellees were entitled to full payment without delay.[4] Hamdallah appealed.

## DISCUSSION

On appeal, this Court addresses whether the Territorial Court Judge erred in finding an implied, non-contingency fee agreement

---

[3] The trial judge rejected Hamdallah's argument that payment was not due until resolution of the District Court case, stating that Warlick "withdrew from representing [Hamdallah] in the . . . case because he failed to make regular payment and therefore the case is over as far as [Warlick] is concerned." App. at 338.

[4] Although the trial court did not make a finding on the hourly billing rate of the appellees, based on submitted invoices Warlick's hourly rate was $125. App. at 276. Quigley's hourly rate was $95. App. at 273.

between Hamdallah and Warlick, and yet awarding fees award based on *quantum meruit* rather than under the terms of that agreement.[5] The standard of review for a trial court's application of a legal precept is plenary. *Nibbs v. Roberts*, 31 V.I. 196, 204 (D.V.I. APP. 1995).

■ Local law holds that "[t]he measure and mode of compensation of attorneys shall be left to the agreement, express or implied, of the parties . . . ." V.I. CODE ANN., tit. 5, § 541(b). The trial record shows that an express contract — the formal retainer agreement destroyed by Hugo — existed at one time. Destruction of the agreement is not the issue here, rather the terms of the arrangement for representation after Attorney Quigley joined forces with Attorney Warlick were presented to the trial court for decision.[6]

■ The judge found that an implied contract had been formed when Quigley began her representation of Hamdallah, and that her demand for a monthly payment modified the previous agreement. Whether a contract is express or implied

involves . . . no difference in legal effect, but lies merely in the mode of manifesting assent. Just as assent may be

---

[5] Hamdallah raises three other issues on appeal. First, he asserts the trial court erred in using improperly admitted evidence as the basis for its denial of Hamdallah's motion for directed verdict. The burden of proof for authentication of evidence is not heavy: "[a]ll that is required is a foundation from which a fact-finder could legitimately infer that the evidence is what its proponent claims it to be." *McQueeny v. Wilmington Trust Co.*, 779 F.2d 916, 928 (3d Cir. 1985) (citing *In re Japanese Electronic Products*, 723 F.2d 238, 260 (3d Cir. 1985), *rev'd on other grounds*, 475 U.S. 574 (1986)). We hold that the trial court as fact-finder could legitimately make such an inference, and therefore did not abuse its discretion by admitting this evidence as the basis for its decision on the motion.
Second, Hamdallah asserts error in the court's denial of his motion to dismiss for failure to state a claim. Viewing the allegations in the light most favorable to the non-moving party, we find that the trial judge did not abuse his discretion by denying Hamdallah's motion and holding trial. See *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).
Finally, Hamdallah asserts that the trial judge abandoned his obligatory impartiality in his extensive questioning of witnesses at trial. Under FED. R. EVID. 614(b) a judge has discretion to initiate interrogation and ask leading questions to elicit germane facts. *Colon v. Government of the Virgin Islands*, 30 V.I. 119 (D.V.I. App. 1994). We hold that the trial judge's questioning was proper.

[6] "The loss, theft, or destruction of the instrument generally has merely the effect of a loss of primary evidence which may be remedied in an action at law by the use of secondary evidence." 13 SAMUEL WILLISTON & WALTER H. E. JAEGER, A TREATISE ON THE LAW OF CONTRACTS § 1599 (3d ed. 1970 & Supp. 1995).

> manifested by words or other conduct, sometimes includ-
> ing silence, so intention to make a promise may be
> manifested . . . by implication from other circumstances,
> including course of dealing . . . or course of performance.

RESTATEMENT (SECOND) OF CONTRACTS § 4 (1981). The court gave great weight to the collection of itemized bills, canceled checks and correspondence submitted as evidence that, taken together, estab- lish both the existence and the terms of the fee agreement; the court also found that Warlick's performance and Hamdallah's subse- quent, if sporadic, payments evidenced assent by both parties. Any award based on an implied contract is covered by our local statute, 5 V.I.C. § 541(b).

 Hamdallah argues that, given the findings of an implied contract and an agreed-upon price, the trial judge's award based on *quantum meruit* was error.[7] He relies on the proposition that "[a]s a general rule a lawyer's compensation is governed by his express contract with his client and he and the client are bound by its terms . . . . As a result, where there is uncontradicted evidence of an agreed-upon price, a court should not award damages based on *quantum meruit.*" *Christian v. Joseph*, 23 V.I. 193, 200 (D.V.I. APP. 1987) (citing *Perlmutter v. Johnson*, 505 A.2d 13 (Conn. APP. 1986), *cert. denied*, 479 U.S. 1035 (1986)(citations omitted)).

This Court concludes that the judge's only error was an inartful use of the term *quantum meruit.* An appellate court may affirm a result reached by a trial judge on different grounds so long as the record supports the judgment.[8] Under this concept, we classify the lower court's ruling as harmless error. While it may have been inconsistent for the court to label the remedy as one in *quantum meruit* and to find an implied agreement between the parties, the ultimate judgment would be the same since the evidentiary record clearly establishes Warlick's entitlement to payment. Moreover, as

---

[7]Hamdallah first contends that the parties formed a contingency contract, and that payment was therefore not due until the conclusion of the District Court case; this Court finds that the evidentiary record clearly establishes the terms of the agreement, including the hourly rate charged and hours billed, with payment on demand and balance due at the end of the case. App. at 229-76, 326-33.

[8]*Accord, Deary v. Government of the Virgin Islands*, 766 F.2d 185, 188 (3d Cir. 1984).

5 V.I.C. § 541(b) states, the amount of attorney's fees to be awarded is discretionary with the court, and is reversible on appeal only in case of a clear abuse of discretion. We find the award to Warlick to be well within the discretion of the lower court.

## CONCLUSION

While the actual basis for the fee award may differ from the trial judge's stated rationale, there is ample evidence to support the grant of attorney's fees, and the amount awarded to the appellees. For the reasons expressed herein, we affirm the Territorial Court's judgment for Warlick. An appropriate order follows.

DATED this 8th day of August, 1996.