**CATHERINE FIGUEROA, Appellant**

**v.**

**BUCCANEER HOTEL INC.; COMPANION ASSURANCE COMPANY; MERIDIAN ENGINEERING INC. (98-7236); CATHERINE FIGUEROA, Appellant**

**v.**

**BUCCANEER HOTEL INC; COMPANION ASSURANCE; MERIDIAN ENGINEERING, INC. (98-7592)**

No. 98-7236, 98-7592

United States Court of Appeals for the Third Circuit

District of the Virgin Islands

August 12, 1999

502

Lee Rohn, Esq., Maurice J. Cusick, Esq., K. Glenda Cameron, Esq. (ARGUED), Rohn & Cusick, Christiansted, St. Croix, U.S.V.I., *Attorneys for Appellant*

George H. Logan, Esq. (ARGUED), Nichols Newman Silverlight Logan & D'Eramo, P.C., Christiansted, St. Croix, U.S.V.I., *Attorney for Appellees*, No. 98-7236.

Wilfredo A. Geigel, Esq. (ARGUED), Law Offices of Wilfredo A. Geigel, Christiansted, St. Croix, U.S.V.I., *Attorney for Appellees*

NYGAARD, McKEE, and RENDELL, *Circuit Judges*

## OPINION OF THE COURT

RENDELL, *Circuit Judge.*

Appellant Catherine Figueroa brought this action against appellees, The Buccaneer Hotel, Inc., Companion Assurance Company, and Meridian Engineering, Inc., contending that appellees fired her because of her religion. She argues on appeal that the District Court erred in granting summary judgment in favor of appellees on her Title VII and Virgin Islands Civil Rights Act claims, and in dismissing her remaining claims with prejudice for failure to state a federal cause of action. Figueroa also urges us to reverse the District Court's October 16, 1998 award of $20,000 in costs to appellees. For the reasons stated below, we will affirm in part and reverse in part.

### I. Facts

Figueroa was employed by appellees as a property manager, bookkeeper, and accountant at the Buccaneer Hotel in St. Croix, United States Virgin Islands. She worked for appellees from 1989 until 1994, at which point, she claims, she was suspended from her

position for "spreading her religious beliefs." Figueroa claims that thereafter she was told that she would be demoted upon her return to work, that she protested the demotion, and that she was then "constructively terminated."

On February 8, 1995, Figueroa filed a religious discrimination claim with the Equal Employment Opportunity Commission (the "EEOC"). Thereafter, on or around August 9, 1995, Figueroa received a "Notice of Right To Sue" letter, notifying her that she had ninety days to bring suit or be barred. Figueroa commenced this action against appellees in the United States District Court for the Virgin Islands 169 days after receiving her right to sue letter. Figueroa listed the following causes of action in her Complaint: religious discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq. (Count I); violation of the Virgin Islands Wrongful Discharge Act, 24 V.I.C. § 76 *et seq.* (Count II); religious discrimination in violation of the Virgin Islands Civil Rights Act (the "Act") (Count III);[1] breach of contract (Count IV); intentional infliction of emotional distress (Count V); and entitlement to punitive damages (Count VI). Figueroa did not file a complaint with the Virgin Islands Civil Rights Commission (the "Commission") or the Virgin Islands Department of Labor.

Appellees filed two motions for partial summary judgment, one asserting that the Title VII claim was time-barred as it was not brought within the ninety day window specified in § 2000e-5(f)(1) of the statute, and the other arguing that Count III should be dismissed because the Virgin Island Civil Rights Act does not afford a private cause of action. The District Court granted both of appellees' motions in a decision and order dismissing Counts I and III. The court also dismissed Figueroa's remaining counts for lack of subject matter jurisdiction, granted appellees' costs as the prevailing party pursuant to 5 V.I.C. § 541, and "invite[d] defendants to move for sanctions under 28 U.S.C. § 1927." Appellees did not move for sanctions but submitted a "Bill of Costs." The court ordered that appellees "are awarded attorneys fees in the amount of $20,000 payable jointly and severally by plaintiff and

---

[1] Although Figueroa did not specify a title or section of the Act in her Complaint, in her response to defendants' motion for partial summary judgment, she specified that she was bringing her claim under chapter 1 or chapter 5 of Title 10 of the Act.

her counsel." Figueroa appeals from the court's orders granting summary judgment and granting appellees' fees. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## II. Discussion

Our review of a grant of summary judgment is plenary. We apply "the same test the district court should have utilized initially," viewing those inferences that may be drawn from the underlying facts in a light most favorable to the nonmoving party. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976). We review the District Court's refusal to exercise supplemental jurisdiction for abuse of discretion. *Sparks v. Hershey*, 661 F.2d 30, 33 (3d Cir. 1981). We normally review the District Court's award of costs and sanctions for abuse of discretion, but if the procedure the court employs in imposing sanctions raises due process concerns, our review is plenary. See *Martin v. Brown*, 63 F.3d 1252, 1262 (3d Cir. 1995) (stating that the district court's imposition of sanctions is reviewed for abuse of discretion unless its procedure raises due process concerns, in which case our review is plenary); *Hamdallah v. Warlick*, 35 V.I. 124, 935 F. Supp. 628, 631-32 (D.V.I. 1996) (review award of costs under § 541 for abuse of discretion). We will address each of appellant's arguments in turn.

### A. Title VII

The District Court dismissed Figueroa's Title VII claim for failure to bring the claim within the ninety day period mandated by 42 U.S.C. § 2000e-5(f)(1).[2] Figueroa does not dispute that she did not bring this claim within the ninety day window specified by the statute, but argues that appellees waived this defense by not raising it in a meaningful way before filing their motion for partial summary judgment, seventeen months after the institution of this suit. We will affirm the District Court on this issue, concluding that

---

[2] 42 U.S.C. § 2000e-5(f)(1) provides in pertinent part:

> The Commission . . . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge.

appellees did not waive this defense and that it is a complete bar to Figueroa's Title VII claim.

■ Section 2000e-5(f)(1) requires that claims brought under Title VII be filed within ninety days of the claimant's receipt of the EEOC right to sue letter. This requirement has been treated by the courts as a statute of limitations rather than a jurisdictional prerequisite to suit. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394, 71 L. Ed. 2d 234, 102 S. Ct. 1127 (1982). Thus, it is subject to waiver. *Id.* at 393. We have held that a claim filed even one day beyond this ninety day window is untimely and may be dismissed absent an equitable reason for disregarding this statutory requirement. *See Mosel v. Hills Dep't Store, Inc.*, 789 F.2d 251, 253 (3d Cir. 1986). Figueroa argues that the "shotgunned" nature of appellees' assertion of the statute of limitations defense in their Answers somehow supplies an equitable justification for finding waiver. This argument is unsupported and totally lacking in merit. All three appellees timely asserted the statute of limitations as an affirmative defense in their Answers to Figueroa's Complaint, clearly preserving this issue. Further, appellees' first Motion for Partial Summary Judgment, which was timely filed in accordance with the court-approved Stipulated Scheduling Order, argued that the statute of limitations barred Figueroa's Title VII claim. These assertions were clearly sufficient. Accordingly, Figueroa's failure to file suit within the 90-day time period completely bars her Title VII claim. We will affirm the District Court on this issue.

### B. Virgin Islands Civil Rights Act

The District Court dismissed Figueroa's claim under Title 10 of the Virgin Islands Civil Rights Act based on its belief that Title 10 affords no private cause of action. The court did not distinguish between a claim brought under chapter 1 of Title 10 and one brought under chapter 5 of Title 10, ruling that, in either case, "only the Commission can sue to recover damages [under the Act], not the individual claiming to be aggrieved." Dist. Ct. Op. at 4 (Feb. 19, 1998). Although the District Court relied upon *Anderson v. Government*, Civ. No. 96-118(N) (D.V.I. Nov. 21, 1997), for the proposition that there is no private cause of action under Title 10 of the Act, the

parties at oral argument conceded that, as we discuss more fully below, the Anderson case is not on point, and the issue before the District Court has not previously been addressed by either the Territorial Court of the Virgin Islands or the district court sitting in the Virgin Islands.

We will first provide the context for this issue by explicating the pertinent provisions of the Act. The Virgin Islands legislature enacted the Civil Rights Act in 1950 with the intent to "prevent and prohibit discrimination in any form." The Act contains six chapters, only two of which — chapter 1 and chapter 5 — are relevant to this case. Chapter 1 of the Act, 10 V.I.C. §§ 1-11, substantially amended and effective in 1961, contains a statement declaring the public policy of prohibiting and punishing discrimination based on race, creed, color, or national origin. § 1. It recognizes the right to equal treatment with respect to employment and working conditions, and specifies those discriminatory acts prohibited under the chapter. § 3. In section 7, the legislature provided civil and criminal penalties for violations of the chapter, including a specific provision for punitive damages. § 7.[3] As an aid to its interpretation, it also includes a provision requiring courts to "construe [it] liberally in furtherance of its intent as stated in section 1." § 10.

In 1974, the Virgin Islands legislature enacted chapter 5 of Title 10, §§ 61-75, and created the Virgin Islands Civil Rights Commission, granting it "general jurisdiction and power" to combat discrimination. § 61. The Commission was empowered to investi-

_____

[3] 10 V.I.C. § 7 provides, in pertinent part:

Whoever . . . violates any of the provisions of this chapter, shall, for each and every such violation, be —

(1) liable in actual damages, and in addition, thereto, to punitive damages not to exceed $5,000 to be recovered in a civil action by the person aggrieved thereby or by any resident of the United States Virgin Islands to whom the person aggrieved may assign his cause of action; and

(2) fined not more than $2000 or imprisoned not more than one year, or both.

. . . .

Neither penalty nor action listed above, in subdivisions (1) and (2) of this section, shall be a bar to the other, and recovery or action in one shall not preclude action or recovery in the other or in any other lawful remedy otherwise possessed by an aggrieved person.

gate allegations of discrimination, collect information about the denial of equal protection of the law in the Virgin Islands, appraise the laws and policies of the Virgin Islands as to such discrimination, hold hearings and disseminate information regarding discrimination, and impose sanctions or provide other remedies in individual cases of discrimination. § 63. Chapter 5 also contains a list of prohibited discriminatory practices, targeting discrimination based on race, color, religion, and national origin as in chapter 1, and also discrimination based on sex and political affiliation. § 64. Chapter 5 provides a mechanism for those aggrieved by discrimination covered under the chapter to file a claim with the Commission, which will then investigate the claim and issue a cease and desist order, and such other orders that in the judgment of the Commission are consistent with enforcement of the chapter.[4] §§ 71-72. Finally, "the Commission may bring a civil action in the Territorial Court of the Virgin Islands by filing with it a complaint" setting forth the facts of the discrimination and requesting such relief as it deems necessary to enforce the Act. § 73. The 1974 amendments to the Act creating the Commission also affected chapter 1 of the Act, adding references to the Commission and deleting sections deemed unnecessary in light of the amendments.[5] The 1974 amendments did not, however, alter section 7 of chapter 1, which continued to provide the right of individuals to recover damages in a civil action, although it did increase the maximum possible imprisonment for a violation of chapter 1 from six months to one year.

Appellees proffer several arguments in support of their position that chapter 1 does not afford a private cause of action and that all

---

[4] Section 71 also provides:

The Commission may, in addition to the foregoing, do either or both of the following:

(1) File a criminal complaint with the office of the Attorney General charging a violation of this chapter, in which case the respondent may, if convicted, be fined not more than $ 2000 or be imprisoned not more than one year, or both.

(2) File a civil action as provided in section 73 of this chapter, in which case the person aggrieved may recover damages as provided in this title.

[5] The amendments, for example, deleted section 6 of chapter 1, which provided for a panel of policemen to be named to inspect businesses and clubs to determine if they were complying with the chapter.

grievances brought under the Act must be brought through the Commission. Primarily, they argue that all claims must be brought through the Commission and offer *Anderson v. Government and Codrington v. Virgin Islands Port Authority*, 33 V.I. 215, 911 F. Supp. 907 (D.V.I. 1996), in support of this reading of Title 10. Figueroa acknowledges that the Commission is given the authority to effectuate the Act's anti-discrimination policies in chapter 5, but urges that chapter 1 clearly creates a private cause of action and the grant of jurisdiction in the Commission to enforce the Act did not replace or eradicate this cause of action. She argues, alternatively, that, even if the Act were read to require a claimant to bring a claim through the Commission, such a requirement should be excused in her case where, due to a Commission member's animosity toward her counsel, the Commission would not have taken action in her behalf.

We agree with Figueroa. The language of section 7 of chapter 1 leaves us with little doubt that the Virgin Islands legislature not only intended to create, but did create, a private cause of action. It creates liability for a violation of the Act, states the type of damages available, states they are recoverable *"in a civil action* by the person aggrieved," and even states that recovery under the Act does not preclude other remedies. § 7. This language, present in the 1961 version of the Act, was the only remedial provision until the 1974 amendments created the Commission. If the language of section 7 of chapter 1 does not create a private cause of action, then, at least until 1974, the Virgin Islands Civil Rights Act was a toothless statement of policy and intent. We can conceive of no permissible reading of chapter 1 — which states the Act's intent to combat discrimination, lists those acts constituting discrimination, and states the damages available "in a civil action by the person aggrieved" — that would not include a private cause of action as clearly provided by section 7 of chapter 1 of the Act. § 7 (emphasis added); *see Government v. Puerto Rican Cars, Inc.*, 1973 U.S. Dist. LEXIS 5198, 10 V.I. 9 (D.V.I. 1973) (case prior to the 1974 amendments recognizing private cause of action under chapter 1).

We must then consider whether the legislature revoked or replaced this existing cause of action when it amended the Act and created the Commission in 1974. Nothing in the language of

chapter 5 itself, nor in any legislative history — which is nonexistent — so indicates. Nowhere in chapter 5, or anywhere else in the Act, did the legislature state an intent to detract from or alter the remedies that were available before the creation of the Commission in 1974. Further, nowhere does chapter 5 state or even imply that the Commission would have exclusive jurisdiction to enforce the Act. Finally, although the 1974 amendments did apply to the language of chapter 1, even amending section 7, they did not alter the critical language in section 7 giving persons aggrieved under the Act the right to bring a civil action for damages. The 1974 amendments merely created an agency with multiple enforcement responsibilities under the Act without expressing any intent to undo the previously granted cause of action.

Appellees argue that the later creation of the Commission, however, changed the statutory scheme such that all actions must proceed through the agency. Does the creation of additional remedies somehow incorporate, override, or annul the previously existing remedy? Although Virgin Islands law has not addressed this issue, we believe universal principles of statutory construction apply.[6] "Where an additional statutory remedy is added to one previously created without expressly or impliedly supplanting or abrogating it, the new statutory remedy is generally not deemed to be exclusive." 1 Am. Jur. 2d Actions § 63 (1994). This principle that the creation of one statutory remedy does not, in itself, abrogate a pre-existing remedy has been commonly recognized in case law. *See, e.g., United States v. Jordan*, 915 F.2d 622, 627 (11th Cir. 1990) ("The fact that Congress codified a preexisting remedy, however, does not, by itself, stand for the proposition that Congress also implicitly intended to circumscribe other available, preexisting statutory remedies."); *Leist v. Simplot*, 638 F.2d 283, 313 (2d Cir. 1980) ("When as here Congress adds a new remedy . . . where other remedies had been clearly recognized, it would be expected to say so if it meant the new remedy to be exclusive."), *aff'd sub*

---

[6] Although we are required to look to Virgin Islands rules of statutory construction in interpreting this statute, *see Hartford Accident & Indem. Co. v. Sharp*, 34 V.I. 383, 87 F.3d 89, 92 (3d Cir. 1996), the principles cited herein are not addressed in its Rules of Construction, 3 V.I.C. §§ 41-52, or Virgin Islands case law. Since the principles of statutory construction cited herein are very conventional, we do not see this lack of guidance from the Virgin Islands legislature and courts as problematic to our analysis.

*nom., Merrill Lynch, Pierce, Fenner & Smith v. Curran*, 456 U.S. 353, 72 L. Ed. 2d 182, 102 S. Ct. 1825 (1982); *Supreme Grand Lodge, Modern Free and Accepted Colored Masons of World v. Most Worshipful Prince Hall Grand Lodge, Free and Accepted Masons*, 209 F.2d 156, 157 (5th Cir. 1954) (stating the creation of a new statutory remedy did not by necessary implication abrogate the pre-existing remedy); *see also Rodriguez v. United States*, 480 U.S. 522, 524, 94 L. Ed. 2d 533, 107 S. Ct. 1391 (1987) (stating that there is a presumption against repeals by implication); *Du Pont v. Ball*, 11 Del. Ch. 430, 106 A. 39, 42 (Del. 1918) (holding that new statutory remedy did not abrogate pre-existing remedy). Thus, we cannot conclude from the enactment of chapter 5 alone that the Virgin Islands legislature intended to revoke the right of action that existed prior to the amendment.

We note that we do not find the District Court's reasoning as dictating a different result. The District Court's analysis was based upon a faulty premise — that prior case law had held that no private cause of action existed under chapter 1 of Title 10 and that a claimant was relegated to proceeding before the Commission. However, the court's reliance on *Anderson v. Government*, Civ. No. 96-118(N) (D.V.I. Nov. 21, 1997), was misplaced. *Anderson* does not decide whether there is a private cause of action under Title 10. Rather, in *Anderson*, the court dismissed a private cause of action brought against the Virgin Islands government under Title 10 because chapter 1, by its terms, does not permit such an action against the government, and there is no private cause of action under chapter 5. *Codrington v. V.I. Port Authority*, cited by appellees, similarly does not decide whether a private cause of action exists under chapter 1. 911 F. Supp. 907 (D.V.I. 1996). Instead, *Codrington* involved a sexual harassment claim and is not relevant, since chapter 1, by its terms, does not include claims for sexual harassment.

Although there is no Virgin Islands authority on point, in *Samuel v. Virgin Islands Telephone Corp.*, 1975 U.S. Dist. LEXIS 11544, No. 75-6, 1975 WL 289, at *7 n.4 (D.V.I. July 8, 1975), Judge Christian noted in a footnote:

> . . . [T]he Legislature of the Virgin Islands did not use terms implying that the Commission was to have the *exclusive*

original right to hear and make determinations concerning civil rights matters . . . .

For this Court to read the word "exclusive" into the statute would be to narrow it. Yet, in light of the ends it seeks to achieve, and the liberal treatment state courts have traditionally accorded statutes of this type, only a broad reading would be appropriate. It is therefore certainly arguable that parties whose rights have been violated under § 64 of chapter 5 need not bring their claims in the first instance to the Commission, but may bring them directly to District Court.

*Samuel*, 1975 WL 289, at *7 n.4.[7] The District Court did not refer to this case in its decision. We see Judge Christian's observation as reinforcing the statutory construction principles we employ.

Other case law supports our view that the mere creation of an agency such as the Commission does not necessarily reflect legislative intent to exclude private enforcement of the Act and that an express indication of exclusivity of remedies is required. *See, e.g., Wright v. City of Roanoke Redev. & Hous. Auth.*, 479 U.S. 418, 424-25, 93 L. Ed. 2d 781, 107 S. Ct. 766 (1987) (concluding that a private cause of action existed where statute and its legislative history were devoid of an indication that exclusive enforcement authority was vested in HUD); *Naegele Outdoor Adver. Co. v. Moulton*, 773 F.2d 692, 699-700 (6th Cir. 1985) (holding that the creation of the Kentucky Registry to investigate violations of campaign financing rules does not mean, without an express statement to the contrary, that the Registry has exclusive jurisdiction to investigate violations of these rules).[8] Here, there is no

---

[7] Judge Christian also noted that an inference of exclusive jurisdiction would be inconsistent with the fact that the Department of Labor is authorized to investigate and enforce rules pertaining to employment discrimination based on race, sex, age, religion, color, or ancestry under Title 24 of the Virgin Islands statutory code, 24 V.I. §§ 451-462 (Discrimination in Employment). Samuel, 1975 WL 289, at *7 n.4.

[8] The reasoning in *Naegele Outdoor Advertising Co.* is especially on point. The issue in this case was whether the Kentucky Registry, charged with the enforcement of state campaign finance laws, had exclusive jurisdiction over investigating violations of these laws. Many of the activities prohibited by the laws had been criminal before the creation of the Registry and had then been investigated by the police and the Commonwealth's attorneys. In determining whether the Registry had the exclusive right to investigate violations of these laws, the court reasoned that nothing in the

implication that chapter 5 was to constitute an exclusive remedy, let alone an express statement to that effect. The only logical interpretation of the 1974 amendments is that the legislature intended to augment the civil rights laws and remedies, not reduce or somehow limit them.

Appellees also argue that chapter 1 of the Act does not recognize claims of religious discrimination such as Figueroa's. This argument is also without merit. Chapter 1 of the Act applies to discrimination based on "race, creed, color or national origin." § 3 (emphasis added). According to the Webster's II New Riverside University Dictionary (1984), creed is defined as a "formal statement of religious belief" or a "confession of faith." Clearly then, chapter 1 encompasses discrimination based on religion.

■ Thus, we find that, contrary to the holding of the District Court, a Title 10 claimant is not required to bring a claim with or through the Commission because chapter 1 of Title 10 creates a private cause of action for discrimination based on religion. For this reason, we will reverse the decision of the District Court and will remand for proceedings consistent with this decision.[9] Due to our holding that Figueroa was not limited to bringing her claim

---

statute's amendments, one of which created the Registry, indicated an intent to deprive law enforcement officers of their traditional role enforcing the election laws. The court stated that "[s]ince the Registry was an agency unknown to Kentucky law until 1976, it follows that the procedures for carrying out its duties necessarily had to be spelled out by the legislature." The legislature's creation and expansion of the Registry's duties, however, "does not in our judgment indicate any implied and certainly no expressed or avowed intent to vest exclusive authority in the Registry to the exclusion of the traditional law enforcement personnel of Kentucky." The court concluded that, absent an express statement to the contrary, the Registry did not have exclusive jurisdiction to investigate violations of the elections laws. Similarly, in this case, at least some of the discrimination prohibited under the Act was prohibited, and presumably litigated, before the creation of the Commission. That the legislature saw fit to create the Commission does not, in itself, imply the intention to grant it the exclusive right to enforce the Act.

[9] Although the claim conferring the District Court's jurisdiction is now dismissed, the court retains the power to hear this territorial claim on remand as the dismissal of a federal claim does not deprive a court of the constitutional power to hear pendent claims. *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 737 n.3 (3d Cir. 1994); *see also New Rock Asset Partners v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1505 (3d Cir. 1996) (once court has decided to exercise jurisdiction over state claims, elimination of federal claims does not defeat jurisdiction); *Rodriguez v. Doral Mortgage Corp.*, 57 F.3d 1168, 1177 (1st Cir. 1995) (stating that federal jurisdiction remains on remand despite the dismissal of the federal claim).

through the Commission, we need not decide whether she was excused from doing so because of its alleged ineffectiveness.

## C. Supplemental Jurisdiction

The District Court, after resolving Figueroa's claims under Title VII and the Virgin Islands Civil Rights Act, dismissed Figueroa's remaining claims for lack of jurisdiction. Figueroa argues on appeal that the District Court's refusal to exercise supplemental jurisdiction over her remaining claims, or its failure to articulate its reasons for doing so as required by *Sparks v. Hershey*, 661 F.2d 30, 33 (3d Cir. 1981), constituted an abuse of discretion. For the reasons stated below, we find that the court did not abuse its discretion in dismissing Figueroa's remaining claims.

Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction." The District Court made no reference to section 1367 in its order dismissing Figueroa's remaining territorial claims, stating only that "[a]s the remaining counts state no federal cause of action, this case will be dismissed with prejudice for lack of subject matter jurisdiction." We deduce from the language of the District Court, however, that the court was aware that it had the discretion to exercise supplemental jurisdiction over these claims under section 1367, but declined to do so based on the consideration set forth in section 1367(c)(3), namely, the dismissal of all claims over which the court had original jurisdiction. We find that the court acted well within its discretion in dismissing Figueroa's remaining territorial claims, as it had dismissed the Title VII claim that provided the court with its jurisdiction.[10] In addition, we hold that, where we can readily determine that the District Court dismissed a claimant's remaining claims based on a consideration enumerated in section 1367(c), it is not reversible error for the court to not state its

---

[10] It is of no effect that the District Court exercised jurisdiction over one of Figueroa's territorial claims — Count III based on the Virgin Islands Civil Rights Act — before declining to exercise supplemental jurisdiction over the remaining claims. *See Southerland v. Hardaway Management, Inc.*, 41 F.3d 250, 256-57 (6th Cir. 1994) (stating that although exercising supplemental jurisdiction over one claim and declining to exercise jurisdiction over other claims is unusual, it is not an abuse of discretion).

reasons for doing so. Although in *Sparks*, which was decided prior to the enactment of section 1367, we stated that we prefer the district court to set forth its basis for dismissing state claims on a jurisdictional basis, *Sparks*, 661 F.2d at 33, failure to do so is not a grounds for reversal when the court's dismissal is clearly based on a statutorily enumerated basis for declination of jurisdiction, as is the case here. Thus, we will not disturb the District Court's dismissal of Figueroa's remaining territorial claims.

█ Although we do not take issue with the District Court's dismissal of Figueroa's remaining claims, we do take issue with the court's statement that it was dismissing these remaining claims "with prejudice." Figueroa argues that a dismissal for lack of subject matter jurisdiction is not an adjudication on the merits and thus should be ordered "without prejudice." We agree. *See Ray v. Eyster (In re: Orthopedic "Bone Screw" Products Liability Litigation)*, 132 F.3d 152, 155 (3d Cir. 1997) (stating that if a court decides that it lacks jurisdiction, it cannot decide the merits); *Korvettes, Inc. v. Brous*, 617 F.2d 1021, 1024 (3d Cir. 1980) ("A dismissal for lack of jurisdiction is plainly not a determination of the merits of a claim. Ordinarily, such a dismissal is 'without prejudice.'"). While we could interpret the court's language "with prejudice" narrowly as a statement regarding Figueroa's inability to later pursue these claims in federal court, we will follow the dictates of our case law in the interest of clarity and consistency, and, as we will send this case back on remand, we will require the District Court to amend its order to reflect dismissal of the territorial claims "without prejudice."[11]

### D. Fee Award

In its February 19, 1998 decision, the District Court awarded appellees costs under 5 V.I.C. § 541,[12] and invited appellees to

---

[11] In reaching this conclusion, we reject appellees' argument that the District Court properly dismissed these claims with prejudice as a sanction for bringing a frivolous Title VII claim in bad faith. Although the District Court did state in its opinion that "at least the Title VII claim was frivolous and filed in bad faith, and this Court invites defendants to move for sanctions under 28 U.S.C. § 1927," it did not give any indication or warning that its dismissal of these claims served as a sanction against appellant.

[12] Section 541 provides:

move for sanctions under 28 U.S.C. § 1927 on the basis that "at least the Title VII claim was frivolous and filed in bad faith." Appellees never moved for sanctions, but did submit a "Bill of Costs" seeking $22,305.41 in fees pursuant to section 541 and Federal Rule of Civil Procedure 54(b). Appellant filed an Opposition to Defendants' Bill of Costs, contending it was improper under section 541, but not specifically challenging it under Rule 54. The District Court rejected all of appellant's arguments except that pertaining to $319.85 in fees for a deposition never taken. The court subtracted $319.85 from the award, "along with other adjustments," and awarded appellees $20,000, payable jointly and severally by plaintiff and her counsel. Appellant contests this order, presenting several arguments as to why the District Court erred in awarding fees under the auspices of section 541 or Rule 54(b), or as a sanction under section 1927. Although not stated in the order, we read the District Court's order as awarding a fee under section 541 and Rule 54(b),[13] but also as imposing a sanction "based on the frivolous filing of certain counts in this suit."[14] For the reasons stated below, we will vacate the District Court's fee order to the extent it awarded fees under section 541 and constituted a sanction under section 1927.

■ A district court has the authority to award fees under section 541 and Rule 54(b), in its discretion, to the prevailing party. There are, however, caveats to these awards, requiring a court to consider specifically what fees are appropriately awarded under a

---

(a) Costs which may be allowed in a civil action include:

. . . .

(6) Attorney's fees as provided in subsection (b) of this section.

(b) The measure and mode of compensation of attorneys shall be left to the agreement, express or implied, of the parties; but there shall be allowed to the prevailing party in the judgment such sums as the court in its discretion may fix by way of indemnity for his attorney's fees in maintaining the action or defenses thereto. . . .

[13] The District Court did not reference the statutory provision upon which it was relying in awarding fees. We therefore assume that it was relying on section 541 and Rule 54 in accordance with appellees' Bill of Costs.

[14] We read this order as partly a sanction based on its statement that the $20,000 award is based on the "premises considered and based on the frivolous filing of certain counts in this suit," because it does not correspond with appellees' fee request, and because the court did not seem to critically assess appellees' fee submission.

given rule. In awarding fees to a prevailing party under section 541, which is a provision of territorial law, the court must subtract fees and costs associated with federal claims, as section 541 is only applicable to fees for the litigant who succeeds in pursuing Virgin Islands territorial claims. *See Thorstenn v. Barnard*, 883 F.2d 217, 218 (3d Cir. 1989). Thus, in this case, the court could not award fees associated with the Title VII claim under section 541. Further, in light of our decision reversing the District Court's dismissal of Figueroa's Virgin Islands Civil Rights Act claim, appellees are no longer, at this stage of the litigation, the prevailing party with regard to any territorial claims.[15] Therefore, the award of fees for appellees, without separating out the federal claim, was error and is now rendered a nullity by our reversal of the dismissal of the territorial claim.

■ To the extent that any of the $20,000 award was entered as a sanction — as it appears from the District Court opinion — we conclude that the court lacked the authority to issue a sanction given the lack of notice and a hearing. Appellees did not accept the court's invitation to move for sanctions pursuant to section 1927. Although a court has the authority to enter sanctions under section 1927 on its own motion, it cannot do so without providing the sanctioned party with due process, or fair notice and an opportunity for a hearing on the record, with regard to any threatened sanctions. *See Martin*, 63 F.3d at 1262-63 (stating that the fundamental requirements of due process — including notice of the grounds for the sanction under consideration — must be afforded before a sanction is imposed). No such notice or hearing was afforded in this case. The court's "invitation" to move for sanctions was the only possible notice and provided plaintiff and counsel no warning of the form of the sanctions threatened, the legal basis for the sanctions, or what specific conduct prompted the sanctions. Nor did appellees' Bill of Costs seek sanctions. The award of fees as a sanction under these circumstances violated Figueroa's due

---

[15] We decline to consider appellees as having "prevailed" with respect to the claims over which the District Court declined to exercise jurisdiction as there was no merits resolution of these claims. *See Polk County v. Dodson*, 454 U.S. 312, 331, 70 L. Ed. 2d 509, 102 S. Ct. 445 (1981) (contrasting a decision "on the merits" with a dismissal for lack of jurisdiction).

process rights. *Id.* at 1262; *Jones v. Pittsburgh Nat'l Corp.*, 899 F.2d 1350, 1357 (3d Cir. 1990) (stating that "a court must provide the party to be sanctioned with notice and some opportunity to respond to the charges").

Finally, appellant challenges the District Court's award of fees under Rule 54 based on appellees' failure to follow the mandatory procedures set forth in the rule. Specifically, appellees did not file and serve a motion for fees within 14 days after entry of judgment as is required. *See* Rule 54(d)(2)(B). Appellant, however, did not raise this argument in the District Court. We have previously stated that the time constraint of Rule 54 is not jurisdictional. *See Mints v. Educational Testing Serv.*, 99 F.3d 1253, 1260 (3d Cir. 1996). Accordingly, under Federal Rule of Civil Procedure 6(b)(2), had Figueroa raised the Rule 54(d)(2)(B) argument in the District Court, appellees could have asked the court to extend the time for filing the Bill of Costs. In *Mints v. Educational Testing Service*, we encountered a similar situation and declined to consider the objection, noting our usual practice of not entertaining arguments initially raised on appeal. 99 F.3d at 1260. However, we also noted that, depending on the procedural posture, we could remand the matter for the District Court to consider whether it should extend the time for filing so that the Bill of Costs would be deemed timely. Since we are remanding the issue of the fee award in any event, we think it proper that the District Court consider whether to extend the time to file the Bill of Costs and thus whether appellees' motion was timely.

For all of the foregoing reasons we have reviewed, the award of $20,000 will be vacated.

## III. Conclusion

For the reasons stated herein, we will affirm the District Court's orders dismissing Figueroa's Title VII claim and its declination to exercise supplemental jurisdiction over Figueroa's remaining territorial claims. We will reverse the District Court's dismissal of Figueroa's Virgin Islands Civil Rights Act claim, and will vacate the District Court's $20,000 fee award. We will remand for further proceedings consistent with this opinion.