**Rita J. CINDRICH, Appellant**

v.

**Michael FISHER; Thomas L. Palmer; Mark A. Pacella; Alexis Barbieri; Donald P. Minahan.**

---

v.

Michael Fisher, in his former capacity as Attorney General and individually; Gerald J. Pappert, Acting Attorney General, individually and in his official capacity; Thomas W. Corbett, Jr., Attorney General, Individually and in his official capacity;

Donald P. Minahan, Former Executive Deputy Attorney General individually and in his official capacity;

Thomas L. Palmer, Former Attorney General In Charge individually and in his official capacity; Mark A. Pacella, Chief Deputy Attorney General individually and in his official capacity; Alexis L. Barbieri, Executive Deputy Attorney General individually and in her official capacity.; Bruce R. Sarteschi, Director of Human Resources, individually and in his official capacity.

Nos. 06–2615, 07–2969.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Oct. 21, 2008.

Filed July 8, 2009.

Patrick Sorek, Esq., Leech, Tishman, Fuscaldo & Lampl, Pittsburgh, PA, for Appellant.

J. Bart DeLone, Esq., Office of the Attorney General of Pennsylvania, Harrisburg, PA, for Appellees.

Before LOKEN, Chief Judge, WOLLMAN, and MURPHY, Circuit Judges.*

LOKEN, Chief Judge.

Rita Cindrich, an attorney in Pennsylvania's Office of Attorney General, commenced two actions in different district courts, asserting First Amendment retaliation claims and pendent state law claims. In the first action, she sued five supervisory officials, including the former Pennsylvania Attorney General who is now a member of this court. In the second action, she added three additional officials, including the Attorney General who terminated her in April 2005. In the first action, the district court [1] granted defendants sum-

---

* Honorable James B. Loken, Chief Judge, Honorable Roger L. Wollman, and Honorable Diana E. Murphy, United States Circuit Judges for the Eighth Circuit, sitting by designation.

1. The Honorable Christopher C. Conner, United States District Judge for the Middle District of Pennsylvania, adopting the Report and Recommendation of the Honorable J. Andrew Smyser, United States Magistrate Judge for the Middle District of Pennsylvania.

mary judgment, dismissing the federal claims on the merits and the pendent state law claims without prejudice. In the second action, the district court[2] granted defendants summary judgment, dismissing the federal claims and some pendent claims on the merits and the remaining state law claims without prejudice. *Cindrich v. Fisher*, 512 F.Supp.2d 396 (W.D.Pa. 2007). Cindrich appeals both final judgments. As the two appeals have many common facts and legal issues, we resolve both in a single opinion. We review each grant of summary judgment *de novo*, affirming only if there are no genuine issues of material fact. *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir.), *cert. denied*, —— U.S. ——, 129 S.Ct. 763, 172 L.Ed.2d 755 (2008). For the following reasons, we affirm the judgments of both district courts.

## I. Background

Cindrich worked as an attorney in the Charitable Trusts and Organizations Section of the Public Protection Division ("the Section") from July 1993 until her forced resignation in 2005. The Section monitors the administration of trusts and estates when property has been committed to one or more charities. Its attorneys appear in probate proceedings, representing the Attorney General in his capacity as *parens patriae* to ensure that assets bequeathed to charities are properly administered. This lengthy dispute began some months after Cindrich's immediate superior, defendant Mark Pacella, was promoted to head of the Section and was replaced as attorney-in-charge of the Pittsburgh office by defendant Lawrence Palmer. In June 2000, Cindrich and Palmer disagreed over what position to take regarding a particular estate. Palmer ordered Cindrich to

remove a section of analysis from an internal memorandum to Pacella. Cindrich disobeyed the directive and sent Pacella a draft containing her analysis.

Over the next two years, Cindrich sent numerous memos and e-mails to Palmer, Pacella, and defendant Alexis Barbieri objecting to her case assignments, accusing Palmer of retaliating because she disobeyed his June 2000 order, questioning Palmer's integrity and intelligence, and accusing private attorneys appearing in contested cases of unethical or conspiratorial conduct. Cindrich met in person with Attorney General Michael Fisher, also a defendant, and complained about her superiors' handling of cases. On June 17, 2003, Cindrich sent Barbieri an e-mail accusing Palmer and Pacella of conspiring "to defeat the public interest" in a court proceeding administering the Laubach estate. Shortly thereafter, unable to persuade her superiors that anything was amiss in that case, Cindrich took six weeks' leave at Barbieri's insistence. Upon returning, she withdrew her appearance in the Laubach case and later disobeyed Pacella's order by sending a letter to the presiding judge offering to "make [herself] available to the Court to support her prior position."

Following this insubordination, Barbieri in an October 2003 letter directed Cindrich to obtain a psychological evaluation by the State Employee Assistance Program. Cindrich responded that she had just seen a psychologist and was certified to return to work. After reviewing the psychologist's certification, Barbieri told Cindrich it did not comply with the prior directive and directed Cindrich to obtain another evaluation. Cindrich filed the first action two months later, alleging that defendants vio-

---

**2.** The Honorable Donetta W. Ambrose, Chief Judge, United States District Court for the Western District of Pennsylvania.

lated her First Amendment rights by taking actions intended to "drive [her] out of her position and cause her to suffer excruciating pain[ ] and mental anguish" after she pointed out irregularities in the Laubach case.

Cindrich continued to work as a Section attorney after filing the first lawsuit. She was assigned to represent the Section in the guardianship proceedings of Evon Nossen. In March 2004, Cindrich sent numerous e-mails to Palmer, Pacella, and Barbieri alleging that a private attorney representing a fiduciary in the Nossen case "mis[s]tated the law" and "held relevant information." She analogized the situation to the Laubach case and recommended filing a petition "in the nature of a contempt proceeding." Cindrich's e-mails implied that other Section attorneys had assisted the private attorney's alleged misconduct, but she never explained or substantiated that accusation. Pacella rejected her recommendation of a contempt petition, "reiterat[ing] that we can not be making allegations we have no material evidence to support." Cindrich agreed the file should be reassigned to Palmer but then sent a long e-mail to Pacella accusing the private attorney of "wearing several hats that may give rise to excessive fees," accusing the fiduciary of "complicity" in the attorney's "misrepresentations," and recommending "that you do not attempt to place the blame on me." Pacella in reply pointed out why Cindrich's suspicions of fiduciary misfeasance and attorney misconduct were unfounded and reminded her, "you are no longer assigned to this case."

Following a leave of absence during the summer and fall of 2004, Cindrich was assigned to proceedings regarding the estate of Ethel Boring. In February 2005, Cindrich sent Pacella a memorandum requesting "an internal review of the assignment of this case [by Palmer], an inquiry into the underlying errors, omissions, and inconsistent documents provided by Counsel during the course of this review, and authority to file Supplemental Objections to bring these matters to the Court's attention." Over the next month, Cindrich complained to Pacella about the assignment of the Boring case and what she perceived to be "overbearing, unjustified and unreasonable interference" by her superiors. On March 8, she disobeyed Pacella's direct order not to file supplemental objections. Pacella removed her from the case. Cindrich sent e-mails suggesting he reconsider, discussing similarities between the Boring case and others on which she had worked, and threatening to seek disciplinary action and whistleblower protection. Several weeks later, she sent a memo to two superiors accusing Palmer and Pacella of gender harassment and retaliation because she had pointed out "wrongdoing" in cases to which she had been assigned. The memo complained of psychological abuse and requested protection under Pennsylvania's whistleblower statute and an internal investigation of her allegations. On April 1, 2005, less than one week later, Barbieri and Pacella notified Cindrich that she was terminated effective April 29, 2005. She resigned April 26 and filed the second action in September.

*The First Action.* Defendants moved for summary judgment at the close of discovery in the first action. The magistrate judge recommended dismissing the First Amendment retaliation claims. Applying the balancing test of *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), to determine when a public employee's interest in speaking out on a matter of public concern outweighs the State's countervailing interest as employer, the magistrate judge concluded that Cindrich's speech was unprotected: (1) her interest in exposing

corruption was weak because she never provided "concrete understandable statements of what the defendants had done that was improper or unethical," and (2) her speech caused significant disruption within the Section and "seriously undermined, if not completely destroyed, the employment relationship between [Cindrich] and defendant Palmer."

The district court adopted the report and recommendations, granted defendants summary judgment dismissing Cindrich's First Amendment claims, and subsequently dismissed the pendent state law claims without prejudice. *Cindrich v. Fisher,* 2006 WL 898176 (M.D.Pa. Apr.6, 2006). Cindrich appealed. With the appeal pending, the Supreme Court decided *Garcetti v. Ceballos,* 547 U.S. 410, 421, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006), which significantly modified governing law by holding that, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."

***The Second Action.*** Following entry of the final order in the first action, the district court in the second action granted defendants summary judgment on all First Amendment retaliation claims, concluding that claims arising prior to September 28, 2003, were time-barred, collateral estoppel barred issues litigated in the first action, and Cindrich's subsequent speech was not protected by the First Amendment as construed in *Garcetti.* Regarding the state law claims, the court granted Cindrich leave to amend her complaint to add tort claims dismissed without prejudice in the first action. Applying Pennsylvania immunity law, the court granted summary judgment on tort claims for defamation, civil conspiracy, and intentional infliction of emotional distress. The court dismissed whistleblower claims arising prior to April

1, 2005, as time-barred. It concluded that Cindrich's unauthorized filing of objections in the Boring case was not a report of "wrongdoing or waste" within the meaning of the statute and granted summary judgment on this whistleblower claim. *See* 43 Pa. Stat. Ann. § 1423(a). However, the court declined to exercise supplemental jurisdiction over whistleblower claims based on other alleged reports of wrongdoing and waste and dismissed those claims without prejudice.

## II. First Amendment Issues

"A public employee has a constitutional right to speak on matters of public concern without fear of retaliation." *Baldassare v. New Jersey,* 250 F.3d 188, 194 (3d Cir. 2001). To prevail on a First Amendment retaliation claim, a public employee must first show that her activity was protected by the First Amendment. This is an issue of law. To warrant First Amendment protection, an employee must speak "as a citizen upon matters of public concern," not "as an employee upon matters only of personal interest." *Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *see Sanguigni v. Pittsburgh Bd. of Pub. Educ.,* 968 F.2d 393, 399–400 (3d Cir.1992). In *Garcetti,* the Court clarified that, even if an employee's speech touches on a matter of public concern, it is not protected speech "as a citizen" if it was made pursuant to the employee's official duties. 547 U.S. at 421, 126 S.Ct. 1951; *see Gorum v. Sessoms,* 561 F.3d 179, 185 (3d Cir.2009); *Foraker v. Chaffinch,* 501 F.3d 231, 239 (3d Cir.2007); *Hill v. Borough of Kutztown,* 455 F.3d 225, 242 (3d Cir.2006). It may, of course, be protected by whistleblower or employment discrimination statutes.

***A. The First Action.*** The district court granted summary judgment prior to the Supreme Court's decision in Garcetti. Based on defendants' concession that some

of Cindrich's speech touched on matters of public concern, the court applied the Pickering balancing analysis and concluded that all of Cindrich's speech was unprotected because, in toto, its disruptiveness outweighed her interest in speaking out on matters of public concern.

■ On appeal, Cindrich makes no effort to identify specific matters of public concern addressed by specific speech. In her view, since the Section serves the public interest in protecting charitable bequests, all criticism of the way in which her superiors carried out these responsibilities was speech addressing a matter of public concern. But the Supreme Court in *Connick* applied a more discriminating approach, separating speech on matters of public concern from speech relating to the employee's private interests and applying *Pickering* balancing only to the former:

> [W]ith but one exception, the questions posed by Myers to her co-workers do not fall under the rubric of matters of "public concern." We view the questions pertaining to the confidence and trust that Myers' co-workers possess in various supervisors, the level of office morale, and the need for a grievance committee as mere extensions of Myers' dispute over her transfer to another section of the criminal court.... [W]e do not believe these questions are of public import in evaluating the performance of the District Attorney as an elected official.

461 U.S. at 148, 103 S.Ct. 1684. Under *Connick*, Cindrich's complaints about case assignments, about who would be blamed for particular actions, and about whether her unduly harsh and at times bizarre accusations warranted a psychological evaluation concerned Cindrich's personal interest as an employee. They were not matters of public concern. "[T]he First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs." *Id.* at 149, 103 S.Ct. 1684.

■ Cindrich alleges that her superiors retaliated against her for identifying ethical and legal issues in the handling of cases to which she was assigned. These allegations require *Pickering* balancing. Though the question is not free from doubt, we assume that speech accusing private parties of misconduct in proceedings in which the Section appeared to protect the public interest touched on a matter of public concern. And certainly speech accusing Section attorneys of complicity in such misconduct did. But after careful review of the summary judgment record in the first action, we agree with the district court that this speech was unprotected for the reasons stated in the magistrate judge's thorough opinion. *See Miller v. Clinton County*, 544 F.3d 542, 550–51 (3d Cir.2008).

■ Moreover, even if Cindrich's speech that touched on matters of public concern could survive summary judgment under *Pickering*, this speech was unprotected as a matter of law under *Garcetti*. In her "chain of command" memos and e-mails, Cindrich "spoke in her capacity as a public employee contributing to the formation and execution of official policy." *Mills v. City of Evansville*, 452 F.3d 646, 648 (7th Cir.2006). These communications "reflect[ed] nothing more than the quintessential employee ·beef: management has acted incompetently." *Haynes v. City of Circleville*, 474 F.3d 357, 365 (6th Cir.2007) (quotation omitted).

■ Cindrich argues that the letter she sent to the judge presiding over the Laubach proceedings was not pursuant to her official duties because it was unauthorized.[3] We disagree. The letter pertained

3. Cindrich also alleged that, in March 2003, she told a judge of the Allegheny County Or-

to a case in which Cindrich had previously appeared on behalf of the Section; it offered to provide support for her "prior position." Advocating a position in a judicial proceeding that could affect a charitable interest was at the core of Cindrich's professional responsibilities. Preventing a line attorney removed from a case from advocating a position contrary to the Section's official position was at the core of the Office of Attorney General's interest as her employer. As the Court explained in *Garcetti*, 547 U.S. at 422–23, 126 S.Ct. 1951:

> Employers have heightened interests in controlling speech made by an employee in his or her professional capacity. Official communications have official consequences, creating a need for substantive consistency and clarity. Supervisors must ensure that their employees' official communications are accurate, demonstrate sound judgment, and promote the employer's mission.

Like her complaints up the chain of command, this letter pertained to Cindrich's performance of her official duties in representing the Section in judicial proceedings. Thus, the summary judgment record conclusively establishes that Cindrich did not send this letter "as a citizen."

Cindrich further argues that the district court erred by ignoring her claims that defendants violated two non-speech First Amendment rights, freedom of association and the right to petition the government for redress. Cindrich did not raise this issue in her brief opposing defendants' motion for summary judgment or in her objections to the magistrate's report and recommendations. She did not identify genuine issues of material fact with respect to these non-speech claims. As we have repeatedly held, "issues not raised before the district court are waived on

appeal." *Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 253 (3d Cir.2007). In addition, the contention is without merit. *See Foraker*, 501 F.3d at 234–38.

**B. The Second Action.** The additional speech at issue in the second action included Cindrich's complaints to her superiors about the Nossen and Boring cases and her unauthorized March 2005 court filing in the Boring case. Applying *Garcetti* as well as *Pickering*, the district court concluded that none of this speech was protected by the First Amendment. We agree.

 The e-mails from Cindrich to her superiors complaining about wrongdoing in the Nossen and Boring cases were made in the performance of her case assignments, involved issues pertaining to those cases, and were based on special knowledge and experience Cindrich acquired through her job. Thus, this was speech made pursuant to Cindrich's official duties. *See Gorum*, 561 F.3d at 186. As for the unauthorized filing, the district court concluded that Cindrich acted pursuant to her official duties when she filed supplemental objections in the Boring case as "Counsel of Record" for the Commonwealth to bring "[o]missions, errors and inaccuracies" by private counsel to the court's attention, even though her action was unauthorized. 512 F.Supp.2d at 403. We agree.

Cindrich primarily argues on appeal that the district court erred by ignoring protected speech activities prior to December 2003. This mischaracterizes the district court's analysis. The court declined to consider First Amendment *claims* based on conduct prior to December 2003 because those claims had been litigated to final judgment (and now affirmed on ap-

---

phans' Court that Palmer was improperly handling cases. This allegation was not time-

ly raised in the district court nor properly raised as an issue on appeal.

peal) in the first action. 512 F.Supp.2d at 402. The court concluded that First Amendment claims based on conduct after December 2003 failed because the speech in question was not protected under *Garcetti*. The issue on appeal is not whether the district court considered all relevant evidence, but whether the court correctly determined that there are no genuine issues of *material* fact precluding summary judgment on these claims. *See* Fed. R.Civ.P. 56(c). As we have explained, Cindrich fails to identify a genuine issue of material fact as to whether the statements in question were made pursuant to her official duties.[4]

### III. State Law Issues

■ Cindrich's final argument in the second action is that the district court erred by exercising supplemental jurisdiction over certain state law claims despite granting summary judgment dismissing her federal claims. When a district court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367(a), as in this case, it has discretion to exercise or decline to exercise this jurisdiction. *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 311 (3d Cir.2003). That decision "should be based on considerations of 'judicial economy, convenience and fairness to the litigants.'" *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1505 (3d Cir.1996), quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726–27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

The statute provides that a district court "may decline to exercise supplemental jurisdiction" if the court "has dismissed all claims over which it has origi-

nal jurisdiction." § 1367(c)(3). We have observed that, in most cases, pendent state law claims should be dismissed without prejudice "where the claim over which the district court has original jurisdiction is dismissed before trial." *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir.1995). On the other hand, "[w]here the original federal jurisdiction claim is proceeding to trial ... considerations [of judicial economy, convenience, and fairness to the parties] will normally counsel an exercise of district court jurisdiction over state claims based on the same nucleus of operative facts." *Id.*

In this case, the district court allowed Cindrich to amend her complaint to add state law claims dismissed without prejudice in the first action. The parties then conducted extensive discovery, argued similar immunity issues under state and federal law, and fully argued defendants' motion for summary judgment on all claims. The district court resolved state law claims that were fully litigated, but not others. The situation is much like that in *Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 181 (3d Cir.1999), where the parties extensively litigated one pendent claim before the district court dismissed all federal claims on the merits and other pendent claims without prejudice. We reversed the dismissal of the litigated pendent claim and remanded that claim for further proceedings, noting that "dismissal of a federal claim does not deprive a court of the constitutional power to hear pendent claims." *Id.* at 181 n. 9. At the same time, we affirmed the district court's decision not to exercise supplemental jurisdiction over the other pendent claims, explaining: "although exercising supple-

---

4. Cindrich also asserts that defendants violated the First Amendment by prohibiting her from reporting problems she encountered in the handling of cases. But Cindrich did not argue this First Amendment theory to the

district court. She may not raise it for the first time on appeal. *See Newark Morning Ledger Co. v. United States*, 539 F.2d 929, 932 (3d Cir.1976).

mental jurisdiction over one claim and declining to exercise jurisdiction over other claims is unusual, it is not an abuse of discretion." *Id.* at 182 n. 10, citing *Southerland v. Hardaway Mgmt. Co.*, 41 F.3d 250, 256–57 (6th Cir.1994). Likewise, in this case, interests of judicial economy, convenience, and fairness to the parties were served by the district court exercising substantial, but not total, supplemental jurisdiction to resolve claims that Cindrich had voluntarily brought in federal court and were fully litigated. There was no abuse of discretion.

The judgments of the district courts are affirmed.