# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rita J. Cindrich, : 
                     Petitioner : 
                                        : 
          v. : No. 440 M.D. 2010
                                          : 
Michael Fisher, former Attorney : Submitted: September 8, 2017
General, individually and in his : 
official capacity; Gerald J. Pappert, : 
former Acting Attorney General, : 
individually and in his official capacity; : 
Thomas W. Corbett, Jr., Attorney : 
General, individually and in his official : 
capacity; Donald P. Minahan, former : 
Executive Deputy Attorney General, : 
individually and in his official capacity; : 
Alexis L. Barbieri, Executive Deputy : 
Attorney General, individually and in : 
her official capacity; Mark A. Pacella, : 
Chief Deputy Attorney General, : 
individually and in his official capacity; : 
Thomas L. Palmer, former Attorney- In- : 
Charge, individually and in his official : 
capacity; Bruce R. Sarteschi, Director : 
of Human Resources, individually and : 
in his official capacity, : 
                       Respondents :

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                **FILED:  October 25, 2017**

In this much-traveled original jurisdiction matter which began in federal district court, we are asked to address cross-motions for summary relief in the form of motions for summary judgment filed by Petitioner Rita J. Cindrich

(Cindrich), a former Senior Deputy Attorney General (SDAG) in Pennsylvania's Office of Attorney General (OAG), and Respondents, who include her former superiors in the OAG's Western Regional and main Harrisburg offices,[1] and former Attorneys General Michael Fisher and Thomas W. Corbett, Jr., and former Acting Attorney General Gerald J. Pappert. In her third amended petition for review, Cindrich reasserts several state and federal claims previously dismissed by the federal courts prior to transfer. Notably, the federal courts dismissed most, but not all, of Cindrich's claims under the Pennsylvania Whistleblower Law.[2] For the reasons that follow, we grant Respondents' motion for summary judgment, deny Cindrich's motion for summary judgment, and dismiss her third amended petition for review with prejudice.

## I. Background

### A. Generally

In Cindrich v. Fisher (Cindrich 2011) (Pa. Cmwlth., No. 440 M.D. 2010, filed August 8, 2011), this Court filed an August 2011 single-judge opinion authored by Judge (now President Judge) Mary Hannah Leavitt, addressing Respondents' preliminary objections to the original state petition for review. Cindrich 2011 sets forth the history of the case as follows.

---

[1] In addition to former Attorneys General Corbett, Fisher and Pappert, Respondents include Donald P. Minahan, former Executive Deputy Attorney General in the Western Regional Office, Alexis Barbieri, former Director of OAG's Public Protection Division, Mark A. Pacella, Chief Deputy Attorney General, Thomas L. Palmer, former Attorney in Charge of the Charitable Trusts and Organizations Section of the Western Regional Office, and Bruce R. Sarteschi, OAG's former Director of Human Resources. Cindrich sued all Respondents in their individual and official capacities.

[2] Act of December 12, 1986, P.L. 1559, as amended, 43 P.S. §§1421-28.

2

Cindrich began working as an attorney in the OAG's Charitable Trusts and Organizations Section in 1993. Cindrich alleges that from 2000 through 2004, she made numerous whistleblower reports to the proper authorities concerning her supervisors' improper or illegal behavior in the workplace. Cindrich further alleges that on March 8, 2005, she made a report, in the form of supplemental objections filed in the Somerset County Court of Common Pleas (Somerset County Court), which contested an accounting done in the case of Estate of Ethel C. Boring (Boring). Cindrich did not have her supervisors' authorization to file the objections with the Somerset County Court. On April 1, 2005, Respondent Corbett, the Attorney General at the time, fired Cindrich.

## B. Cindrich 2007 (Federal Court)

On September 28, 2005, Cindrich sued Respondents in the United States District Court for the Western District of Pennsylvania (Western District), asserting several federal and state law claims, including a violation of Pennsylvania's Whistleblower Law. On April 10, 2006, pursuant to the Whistleblower Law's 180-day statute of limitations, the Western District dismissed Cindrich's whistleblower claim in part. See Cindrich v. Fisher (Cindrich 2007), 512 F.Supp.2d 396, 397, 404 (W.D. Pa. 2007).

On May 31, 2007, the Western District granted summary judgment in favor of Respondents on all of Cindrich's federal claims. Id. at 399–400, 402, 404. The Western District also granted summary judgment in favor of Respondents on the issue of whether Cindrich's March 8, 2005, filing with the Somerset County

3

Court was actionable under the Whistleblower Law.  The Western District held that Cindrich's March 8, 2005 "report" had nothing to do with alleged wrongful conduct by Respondents.  Id. at 405.  However, the Western District denied summary judgment on the remainder of the whistleblower claim, i.e., Cindrich's pre-2004 reports.  Id. at 406.  In July 2009, the Third Circuit affirmed the Western District. Cindrich v. Fisher (Cindrich 2009), 341 F. Appx. 780, 789-90 (3d Cir. 2009).

## C. Cindrich 2011 (First Preliminary Objections)

In June 2007, Cindrich transferred her state whistleblower claim to the Allegheny County Court of Common Pleas (Allegheny County Court) in accordance with 42 Pa. C.S. §5103(b).[3]  Thereafter, Respondents moved to transfer that claim to this Court.  By order of March 29, 2010, this Court granted the motion and took jurisdiction.[4]  Respondents filed preliminary objections on April 20, 2011, claiming Cindrich's whistleblower claim was time-barred or, alternatively, that she failed to state a cognizable claim under the Whistleblower Law with respect to her pre-2004 reports of wrongdoing or waste.

In her single-judge opinion in Cindrich 2011, Judge Leavitt observed Section 4(a) of the Whistleblower Law requires that a claim be filed within 180 days of the alleged violation.  43 P.S. §1424(a).  Cindrich alleged she received

_____

[3] 42 Pa. C.S. §5103(b)(1) allows for cases originally filed in federal court to be transferred to state courts with proper jurisdiction.

[4] Under 42 Pa. C.S. §761(a)(1), this Court has original jurisdiction over all civil actions against the Commonwealth, including any officer thereof, acting in his or her individual capacity.

Respondents' notice of termination on April 1, 2005, and she filed her original federal court complaint on September 28, exactly 180 days later. Noting it must accept as true Cindrich's allegation that Respondents dismissed Cindrich on April 1, 2005, Judge Leavitt overruled Respondents' preliminary objection that Cindrich's whistleblower claim was time-barred.[5]

However, Judge Leavitt sustained Respondents' preliminary objection in the nature of demurrer. To state a claim under Section 4(b) of the Whistleblower Law, an employee alleging a violation of the Act must show by a preponderance of the evidence that

> prior to the alleged reprisal, the employee . . . had reported or was about to <u>report in good faith</u>, verbally or in writing, an instance of <u>wrongdoing or waste</u> to the employer or an appropriate authority.

43 P.S. §1424(b) (emphasis added).

A terminated employee suing under the Whistleblower Law must specify how her employer is guilty of waste or wrongdoing and establish "by concrete facts or surrounding circumstances" a causal connection between her good faith report of wrongdoing or waste and subsequent termination. <u>Gray v. Hafer</u>, 651 A.2d 221, 225 (Pa. Cmwlth. 1994), <u>aff'd</u>, 669 A.2d 335 (Pa. 1995).

---

[5] When ruling on preliminary objections, this Court "must accept as true all well-pleaded material allegations in the petition for review, as well as all inferences reasonably deduced therefrom." <u>Envirotest Partners v. Dep't of Transp.</u>, 664 A.2d 208, 211 (Pa. Cmwlth. 1995) (citing <u>Meier v. Maleski</u>, 648 A.2d 595, 600 (Pa. Cmwlth. 1994)).

Judge Leavitt noted that Cindrich's complaint listed numerous instances of Respondents' alleged violations of law, office policy and the OAG's "code of conduct." See Cindrich 2011, slip op. at 7-10. However, Judge Leavitt noted that Cindrich failed to explain how Respondents' action constitutes wrongdoing or waste under the Whistleblower Law. In short, Judge Leavitt determined Cindrich's vague complaint, which did not aver how Respondents were guilty of waste or wrongdoing, failed to state a claim for relief under the Whistleblower Law. Therefore, Judge Leavitt sustained Respondents' demurrer.

Nevertheless, Judge Leavitt noted a court may grant leave to amend a pleading that lacks specificity, but which may be corrected by additional pleading. See Gray, 651 A.2d at 225. Judge Leavitt noted Cindrich filed her original and amended federal court complaints under federal rules which permit notice pleading. The Commonwealth, however, requires fact pleading. In accord with Gray, Judge Leavitt granted Cindrich leave to amend her complaint. Cindrich 2011, slip op. at 10.

## D. Cindrich 2013 (Second Preliminary Objections)

On September 12, 2011, Cindrich filed an amended petition for review. On September 17, 2011, Cindrich filed a petition for review in the nature of a complaint in equity. On September 30, 2011, Respondents filed preliminary objections. In response, Cindrich filed preliminary objections to Respondents' preliminary objections. Ultimately, in August 2012, Cindrich filed her third amended petition for review. Respondents then filed preliminary objections, which

the Court addressed in <u>Cindrich v. Fisher (Cindrich 2013)</u> (Pa. Cmwlth., No. 440 M.D. 2010, filed January 25, 2013) (unreported).

In a single-judge opinion, Senior Judge Rochelle S. Friedman first overruled Respondents' preliminary objection that Cindrich failed to timely file her third amended petition for review. Senior Judge Friedman noted that amendments are to be liberally permitted in order to develop a party's theories and averments. <u>See</u> <u>Cindrich 2013</u>, slip. op. at 4-5. Senior Judge Friedman noted Cindrich filed her amended petition only a few days late due to inclement weather, which closed the Court's filing office, and other extenuating circumstances, including her husband's medical condition. <u>Id.</u>

Senior Judge Friedman next addressed Respondents' preliminary objection in the nature of demurrer. Respondents argued that Cindrich merely increased the length of her petition but still failed to state a claim upon which relief could be granted. They further argued Cindrich failed to show a causal connection between the activities about which Cindrich claimed she "blew the whistle" and any specific retaliatory actions of Respondents.

In addressing Respondents' demurrer, Senior Judge Friedman first noted the language of Section 3(a) of the Whistleblower Law, which states:

> No employer may discharge, threaten or otherwise discriminate or <u>retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment</u> because the employee or a person acting on behalf of the employee makes a good faith report or is about to make a good faith report, verbally

or in writing, to the employer or appropriate authority an instance of wrongdoing or waste.

43 P.S. §1423(a) (emphasis added). Citing the following paragraphs of Cindrich's third amended petition for review, Senior Judge Friedman determined Cindrich stated at least one claim under the Whistleblower Law:

> (28) In July 2001, [Cindrich] reported to Respondent Pacella that Respondent Palmer abdicated his duty in favor of his friend; Respondent Palmer tried to coerce [Cindrich] to send a no objection letter to the request of his friend Joseph Katarincic, Esquire to approve the unlawful and premature termination and distribution of the $1,000,000 *Noble Dick Trust* without seeking Court approval. Id. ¶30.
>
> * * * *
>
> (30) When [Cindrich] refused to issue a no objection letter, she was informed the Trustee determined not to terminate the trust. The file was reassigned to Respondent Palmer. The *Noble Dick Trust* was terminated and the assets were transferred to fund the Joseph A. Katarincic Chair, without an account and without Court approval and for a purpose different than the settlor directed. The law violated at the time was the law of deviation and 20 Pa. C.S. §6102. Respondent Palmer reported to Attorney General Fisher that he did not know how the assets were transferred to a local university as a chair in Joe Katarincic's name. Id. ¶30. [Cindrich] identified this particular case and the actions of her superiors in her Whistleblower report to the Honorable Frank J. Lucchino on or about March 20, 2003 and related the facts in detail. [Cindrich] hereby incorporates the Judge Lucchino Affidavit and ¶14 of Plaintiff's Responses to Defendants' First Set of Interrogatories as if set forth in full.
> (31) In acting on behalf of his friend, Joe Katarincic, Esquire, Respondent Palmer violated the law and the **Code of Conduct Section I.B. Restricted Activities,** No employee of the [OAG] shall: c. represent or act as agent for any private interest, whether for compensation or not,

8

in any transaction in which the Commonwealth or the [OAG] has a direct and substantial interest which could be expected to result in a conflict between a private interest of the employee and official public responsibility; e. For the personal gain of the employee or for the gain of others, use any information obtained as a result of service or employment with the Commonwealth and not available to the public-at-large or divulge such information in advance of the time prescribed for its authorized release; D. **Additional Restricted Activities,** e. Shall conduct themselves in accordance with the [C]ode of Professional Responsibilities, 204 Pa. Code Chapter 81 Rule 5.1(b)(c); Rule 8.4a,c,d,e, and f. PL. EX. AO-AQ.

Pet'r's Third Am. Pet. for Review at ¶¶28, 30-31.

To that end, Senior Judge Friedman determined Cindrich identified a good faith report she made to Judge Lucchino of the Allegheny County Court asserting Respondent Palmer engaged in wrongdoing under the Whistleblower Law by terminating the Noble Dick Trust without court approval as required by 20 Pa. C.S. §6102, and in violation of the law of deviation. Cindrich 2013, slip op. at 7-8. Notably, however, Senior Judge Friedman did not explain how the alleged occurrences in 2001 and 2003 established a causal connection to her April 2005 termination, especially in light of Cindrich's intervening and proximate unauthorized filing in March 2005. Nevertheless, having determined Cindrich stated a *prima facie* claim upon which relief could be granted for purposes of defeating the demurrer, Senior Judge Friedman overruled Respondents' preliminary objections and directed Respondents to file an answer within 20 days. Ultimately, Respondents filed a timely answer.

### E. Cross-Motions for Summary Relief/Summary Judgment

9

In December 2016, following the close of pleadings and discovery, Respondents filed an application for summary relief in the form of a motion for summary judgment. Respondents assert their right to relief is clear and that there are no genuine issues of material fact.

In January 2017, Cindrich filed an application for summary relief seeking disposition of her petition for review. Cindrich argues she alleged sufficient facts to state a claim under the Whistleblower Law. To that end, Cindrich claims she made a number of good faith reports of wrongdoing and waste to the appropriate authorities prior to her termination. She asserts she established a *prima facie* case showing Respondents discharged her based on her good faith whistleblower report she either made or was about to make. Cindrich further contends Respondents' defenses to her whistleblower claims are not supported by Respondents' evidence, which consist primarily of self-serving statements.

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, admissions and affidavits, if any, demonstrate there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Kniaz v. Benton Borough, 642 A.2d 551 (Pa. Cmwlth. 1994). "However, testimonial affidavits and oral depositions of the moving party, without supporting documents, are insufficient to support a motion for summary judgment." Id. at 553. Further, when a motion for summary judgment is made and supported as provided in the rule, "the adverse party may not rest only on the mere allegations or denials in his pleadings, but must set forth in his response by affidavits, or as otherwise provided, specific facts in dispute." Id. (emphasis added).

## II. Discussion

## A. Respondents' Motion for Summary Judgment

### 1. Third Amended Petition for Review (Generally)

Initially, we note Cindrich's third amended petition for review included the following counts: Count One: Whistleblower Law; Count Two: First Amendment; Count Three: Retaliation for Exercise of Constitutional Rights; Count Four: Defamation; Count Five: Civil Conspiracy; Count Six: Intentional Infliction of Emotional Distress; Count Seven: Declaratory, Injunctive Relief and Mandamus; and Count Eight: Any Other Relief to Which Petitioner is Entitled. Respondents assert these claims were also raised by Cindrich in federal court. These six counts are identical to those in Cindrich's second amended complaint filed in federal court. See Cindrich 2007, 512 F.Supp.2d at 397-98.

### 2. *Res Judicata*; Collateral Estoppel (Counts Two through Six)

First, Respondents contend that Cindrich's claims in Counts Two through Six of her third amended petition for review in this Court (non-whistleblower claims) are barred by the doctrines of *res judicata* and collateral estoppel. To that end, Respondents assert the Western District ultimately dismissed all of these claims on summary judgment.

The doctrine of *res judicata* precludes the re-litigation of issues decided in a prior valid judgment in any future suit between the same parties on the same cause of action. Bell v. Twp. of Spring Brook, 30 A.3d 554 (Pa. Cmwlth. 2011); Unified Sportsmen of Pa. v. Pa. Game Comm'n, 950 A.2d 1120 (Pa. Cmwlth. 2008). In order for technical *res judicata* to apply, there must be a concurrence of four

11

conditions: (1) an identity of the thing sued for; (2) an identity of causes of action; (3) an identity of persons and parties to the action; and, (4) an identity of the quality or capacity of the parties suing or being sued. Unified Sportsmen.

The doctrine of collateral estoppel precludes the re-litigation of factual or legal issues decided in a prior proceeding. Bell. Collateral estoppel only applies if: (1) the issue decided in the prior case is identical to the one presented in the present case; (2) there was a final judgment on the merits; (3) the party against whom the doctrine is asserted was a party in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to actually litigate the issue in the prior proceeding; and, (5) the determination in the prior proceeding was essential to the judgment. Bell; Unified Sportsmen.

### a. Counts Four through Six

Tracking the Western District's decision in Cindrich 2007, we first address Respondents' contention that Counts Four (Defamation), Five (Civil Conspiracy) and Six (Intention Infliction of Emotional Distress) of Cindrich's third amended petition for review in this Court, are barred by the doctrines of *res judicata* and collateral estoppel. In Cindrich 2007, the Western District, speaking through then Chief Judge (now Senior Judge) Donetta W. Ambrose, determined that Respondents were entitled to sovereign immunity under 1 Pa. C.S. §2310[6] and 42

___

[6] 1 Pa. C.S. §2310 provides, in pertinent part: "Pursuant to section 11 of Article 1 of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees, acting within the scope of their duties, shall

12

Pa. C.S. §8521-22 from Cindrich's claims of defamation, civil conspiracy and intentional infliction of emotional distress. See Cindrich 2007, 512 F.Supp. 2d at 398-400.

Judge Ambrose determined that Respondents were at all times acting within the scope of their duties and that Cindrich's claims for defamation, civil conspiracy and intentional infliction of emotional distress do not fall within the nine narrow areas for waiver of immunity set forth in 42 Pa. C.S. §8522(b).[7] Notably, Judge Ambrose rejected Cindrich's argument that Respondents acted outside the scope of their official duties. To that end, Judge Ambrose noted all acts discussed by Cindrich in her complaint occurred within the employment setting and were within a supervisor's responsibilities. See Cindrich 2007, 512 F.Supp. 2d at 399.

In addition, Judge Ambrose dismissed Cindrich's argument that Respondents lost their immunity because they engaged in willful misconduct. As the Judge pointed out, the General Assembly did not waive sovereign immunity for intentional torts committed by Commonwealth employees. See Yakowicz v. McDermott, 548 A.2d 1330 (Pa. Cmwlth. 1988) (unlike local agency employees who lose their immunity from liability under 42 Pa. C.S. §8550 where their acts constitute willful misconduct, Commonwealth employees do not lose their immunity

_____

continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity."

[7] Section 8522(b) of the Judicial Code waives sovereign immunity to claims for damages caused by: (1) vehicle liability; (2) medical-professional liability; (3) care, custody and control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions of highways; (6) care, custody and control of animals; (7) liquor store sales; (8) National Guard activities; and, (9) toxoids and vaccines. 42 Pa. C.S. §8522(b).

even for intentional torts; act of performing a defamatory performance evaluation does not fall within the nine exceptions to sovereign immunity in 42 Pa. C.S. §8522(b)).

Consequently, because the parties are the same, the relevant facts and time period are the same, and the claims Cindrich asserts in Counts Four, Five and Six of her third amended petition for review in this Court are the same as those addressed and rejected by Judge Ambrose in Cindrich 2007, we hold that Cindrich's claims for defamation, civil conspiracy and intentional infliction of emotional distress are barred by the doctrine of *res judicata*. Bell. The Western District court afforded Cindrich a full and fair opportunity to litigate these issues before granting summary judgment on them in Respondents' favor. Consequently, she is barred from raising them again in an amended petition for review in this Court. Id.

### b. Counts Two and Three

We next address Respondents' argument that the doctrines of *res judicata* and collateral estoppel also bar Cindrich's First Amendment claim in Count Two and her claim of retaliation for exercise of constitutional rights claim in Count Three. In Cindrich 2007, Judge Ambrose observed that on December 15, 2013, Cindrich filed an action in the U.S. Middle District Court (Middle District) against Respondents Fisher, Palmer, Pacella, Barbieri and Minahan asserting these Respondents violated her First Amendment rights by retaliating against her in 2003 for whistleblower claims. See Cindrich v. Fisher (Cindrich 2006), (M.D. Pa., No. Civ.A. 103CV2282, filed February 10, 2006) 2006 WL 3102393 (unreported).

14

The Middle District, speaking through Judge (now Chief Judge) Christopher C. Conner, determined that Cindrich's interest in speaking on a matter of public concern was outweighed by the injury to her employer caused by the speech. In reaching this decision, Judge Conner reviewed a magistrate's report, which included proposed findings and a recommendation that summary judgment be granted in Respondents' favor. After conducting an independent review of the record, Judge Conner entered judgment in favor of Respondents on Cindrich's First Amendment retaliation claims. As the Third Circuit eventually noted in its review of Cindrich 2006, Judge Conner agreed with the magistrate's analysis that Cindrich "never provided concrete understandable statements of what Respondents did that was improper or unethical" and that "her speech caused significant disruption within the [Charitable Trusts] Section" and seriously undermined, if not destroyed, the employment relationship between Cindrich and her immediate supervisors. See Cindrich 2009, 341 F. Appx. at 785-86 (emphasis added).

In support of his decision, Judge Conner cited Swineford v. Snyder County Pa., 15 F.3d 1258 (3d Cir. 1984), which upheld dismissal of a First Amendment retaliation claim where an employee's speech severely disrupted office efficiency and included allegations of employer misconduct that were not supported by substantial evidence. In Swineford, the Third Circuit employed a balancing test set forth in Pickering v. Board of Education of Township School District 205, Will County, Il., 391 U.S. 563 (1968). The Court reasoned (with emphasis added):

> Speech involving government impropriety occupies the highest rung of First Amendment protection. Moreover, the public's substantial interest in unearthing governmental improprieties requires courts to foster legitimate whistleblowing. However, the First

15

> Amendment does not convert private grievances into constitutional cases. Nor does it require public employers to sit idly by while disgruntled employees destroy office operations and efficiency. A balance must be struck between the employee's right to speak and the employer's need effectively [sic] to discharge its public responsibilities. On this record, after the plaintiff brought her grievances to the attention of the public and the proper law enforcement authorities who rejected them, her personal interest in continuing to seek a criminal indictment against the defendants was outweighed by the defendants' interest in efficiently meeting their obligations to the public.

Id. at 1274.

Thereafter, the Western District determined in Cindrich 2007 that Cindrich had a full and fair opportunity to litigate her First Amendment retaliation claims occurring prior to December 15, 2003. Therefore, based on collateral estoppel, Judge Ambrose entered summary judgment in Respondents' favor as to Cindrich's First Amendment retaliation claims related to conduct occurring before December 15, 2003. See Cindrich 2007, 512 F.Supp.2d at 402.

Judge Ambrose next addressed Cindrich's First Amendment claims related to Respondents' alleged conduct occurring after December 15, 2003. Citing Garcetti v. Ceballos, 547 U.S. 410 (2006), which superseded the Pickering balancing test, the Court recognized that a public employee's statement is protected activity when: (1) in making it, the employee spoke as a citizen; (2) the statement involved a matter of public concern; and, (3) the government employer did not have adequate justification for treating the employee different from any other member of the general public based on the statements he made. In Garcetti, the U.S. Supreme Court held "that when public employees make statements pursuant to their official duties,

16

the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Id. at 421 (emphasis added). In short, "the First Amendment 'does not invest [public employees] with a right to perform their jobs however they see fit.'" Cindrich 2007, 512 F.Supp.2d at 403 (quoting Garcetti, 547 U.S. at 422).

Applying Garcetti to the facts here, Judge Ambrose determined that Cindrich's post-December 15, 2003 statements were related to her official duties as an SDAG and that she was speaking as a public employee rather than a public citizen for First Amendment purposes. Therefore, Judge Ambrose found Garcetti to be controlling and reasoned that Cindrich's post-December 15, 2003 statements were those of a public employee performing her duties. Consequently, the Western District entered summary judgment in favor of Respondents as to Cindrich's remaining First Amendment claims. Cindrich 2007, 512 F.Supp.2d at 404.

Ultimately, in Cindrich 2009, the Third Circuit affirmed both the Middle District's decision in Cindrich 2006 and the Western District's decision in Cindrich 2007 dismissing Cindrich's First Amendment claims. In particular, the Third Circuit noted that Cindrich's statements to her superiors regarding wrongdoing in her cases were made in the performance of her duties and were based on special knowledge and experience Cindrich acquired during the performance of her job. See Cindrich 2009, 341 F. Appx. at 788. Moreover, the Third Circuit agreed with the Western District's determination that Cindrich failed to identify a genuine issue of material fact as to whether her statements were made pursuant to her official duties. Id. at 789.

17

Here, Counts Two and Three of Cindrich's third amended petition for review again raise the same First Amendment claims dismissed by the federal district courts in Cindrich 2006 and Cindrich 2007 and affirmed by the Third Circuit in Cindrich 2009. For purposes of collateral estoppel, we note the First Amendment issues decided in the federal courts are identical to those presented in Counts Two and Three; the federal courts issued a final judgment on the merits of those claims; Cindrich was the plaintiff in those decisions and Respondents were, for the most part, the same defendants as in the present case. Most importantly, we note that Cindrich had a full and fair opportunity to actually litigate her First Amendment issues in the prior proceedings. Therefore, we hold that Cindrich is collaterally estopped from again asserting her First Amendment claims before this Court. Bell; Unified Sportsmen.

### 3. *Res Judicata* (Count One)

Respondents further assert that the Western District's decision in Cindrich 2007 bars all of Cindrich's Whistleblower Law claims regarding acts occurring immediately prior to the Respondents' April 1, 2005 notification of termination of Cindrich's employment. More particularly, Respondents contend Cindrich 2007 limited Cindrich's retaliation claim for her 2005 termination to her pre-2004 alleged reports of wrongdoing and waste under the Whistleblower Law. See Cindrich 2007, 512 F.Supp.2d at 406. We agree.

In Cindrich 2007, 512 F.Supp.2d at 405, Judge Ambrose noted that she previously ruled that all of Cindrich's whistleblower claims, based on actions taken

by Respondents against her prior to April 1, 2005, have been dismissed with prejudice as time barred based on the statute of limitations in Section 4(a) of the Whistleblower Law, which provides:

> **(a) Civil action.**—A person who alleges a violation of this act may bring a civil action in a court of competent jurisdiction for appropriate injunctive relief and damages, or both, <u>within 180 days after the occurrence of the alleged violation</u>.

43 P.S. §1424(a). Here, Cindrich filed her complaint in the Western District on September 28, 2005, exactly 180 days after Respondents notified her on April 1, 2005, that her employment would be terminated effective April 29, 2005. As we noted in <u>O'Rourke v. Pennsylvania Department of Corrections</u>, 730 A.2d 1039 (Pa. Cmwlth. 1999), the 180-day time limit is mandatory and cannot be extended by the courts. Consequently, the Western District properly determined Cindrich's retaliation claims are limited solely to Respondents' April 1, 2005 notification of termination of her employment. <u>Cindrich 2007</u>.

In addition, the Western District also dismissed Cindrich's Whistleblower Law claim based on Cindrich's March 8, 2005 filing in the Somerset County Court in <u>Boring</u>, a trust case then assigned to Cindrich. Despite being specifically instructed by her immediate supervisors not to file a motion for leave to file amended objections in <u>Boring</u>, Cindrich disregarded her supervisors' directions and filed the amended objections in the Somerset County Court.[8]

---

[8] Cindrich's March 8, 2005 filing is included in the record as Attachment A to Defendants' Ex. 99. <u>See</u> Mem. of Law in Support of Resp'ts' Application for Summ. Relief in the form of Mot. For Summ. J., filed 1/6/17 (Resp'ts' Summ. J. Br.), Appendix.

In Cindrich 2007, Respondents argued that Cindrich's March 8, 2005 filing was not a "good faith report" of "wrongdoing" or "waste" as defined in Section 2 of the Whistleblower Law, 43 P.S. §1422. A "good faith report" is a "report of conduct defined in this act as wrongdoing or waste <u>which is made without malice or consideration of personal benefit</u> and which the person making the report has reasonable cause to believe is true." 43 P.S. §1422 (emphasis added). "Wrongdoing" is defined as a "violation which is not of a merely technical minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or of the employer." <u>Id.</u> "Waste" is defined as an "employer's conduct or omissions which result in substantial abuse, misuse, destruction or loss of funds or resources belonging to or derived from Commonwealth or political subdivision sources." <u>Id.</u>

After reviewing Cindrich's March 8, 2005 filing (Defendants' Ex. 99, Attach. A), Judge Ambrose determined the filed documents were not a report of "wrongdoing" or "waste" as defined by the Whistleblower Law. <u>See</u> <u>Cindrich 2007</u>, 512 F.Supp.2d at 405. Consequently, the Judge determined no genuine issue of material fact existed as to whether Cindrich's March 8, 2005 filing constituted a cognizable Whistleblower Law claim. <u>Id.</u> Therefore, the Western District granted summary judgment in favor of Respondents to Cindrich's Whistleblower Law claim based on her March 8, 2005 filing in the Somerset County Court.

Again, because the parties are the same, and the relevant facts and the issues are the same, Cindrich's whistleblower claims in Count One (with exception

20

of those related to her alleged pre-2004 alleged reports of wrongdoing and waste resulting in her termination of employment) are barred under the doctrine of *res judicata*. Bell. The Western District afforded Cindrich a full and fair opportunity to litigate those issues before entering judgment on them in Respondents' favor. Consequently, she is barred from raising them again in her third amended petition for review in this Court. Bell; Unified Sportsmen.

Nonetheless, Judge Ambrose observed that Respondents did not address other various whistleblower reports of alleged wrongdoing and waste Cindrich filed before 2004. Although Respondents argued that Cindrich's employment was terminated for insubordination, Judge Ambrose stated that Cindrich's evidence, viewed in a light most favorable to her, could create a genuine issue as to the reason for the termination of her employment. Therefore, the Western District declined to grant summary judgment on Cindrich's alleged pre-2004 whistleblower reports. Thus, the only remaining whistleblower issue to be decided by this Court is whether Respondents terminated Cindrich in violation of Section 1423(a) of the Whistleblower Law, 43 P.S. §1423(a) in retaliation for pre-2004 good faith reports of wrongdoing or waste.

### 4. Remaining Whistleblower Law Claim (Count One)

In accord with the foregoing discussion, the only remaining issue to be decided by this Court is whether Respondents violated Section 1423(a) of the Whistleblower Law by discharging her from employment in retaliation for her pre-2004 good faith reports of wrongdoing or waste.

21

Here, Respondents assert they are entitled to summary judgment because Cindrich filed her report in 2003, nearly two years prior to her discharge. Further, Respondents maintain that in order to succeed on a Whistleblower Law claim, a plaintiff "must make more than a general statement that a report was filed and, within a given amount of time, [she] was fired as a result." Gray, 651 A.2d at 225 (emphasis added). Rather, an employee who has been terminated based on a filed report and wants to base her complaint on a violation of the Whistleblower Law must specify how her employer is guilty of waste and wrongdoing. Id. The plaintiff "must also show by concrete facts or surrounding circumstances that the report led to [her] dismissal, such that there was specific direction or information [she] received not to file the report or there would be adverse consequences because the report was filed." Id. (emphasis added, footnote omitted). Further, "[t]he Whistleblower Law 'is not designed to provide insurance against discharge or discipline for an employee who informs on every peccadillo of [her] fellow employees.'" Evans v. Thomas Jefferson Univ., 81 A.3d 1062, 1070 (Pa. Cmwlth. 2013) (citation omitted).

If the plaintiff makes a *prima facie* showing of a causal connection, the burden shifts to the defendant to show a separate and legitimate reason for its actions. Id. However, "'[v]ague and inconclusive circumstantial evidence' is insufficient to satisfy that threshold burden to show a causal connection and shift the burden to the defendant to justify its actions." Id. at 1070 (quoting Golaschevsky v. Dep't of Envtl. Prot., 720 A.2d 757, 759 (Pa. 1998)) (emphasis added).

Here, Respondents assert, Cindrich submitted no evidence of a causal connection between her pre-2004 whistleblower reports and Respondents' April 1, 2005 notification of her termination. To that end, Respondents cite to Paragraph 16, Subparagraphs 15, 25, 32 and 103 of Cindrich's third amended petition for review, wherein Cindrich averred that in 2000-2002 Respondent Palmer retaliated against her alleged reports of wrongdoing and waste by fabricating complaints about her job performance. Cindrich further alleged in Paragraph 16, Subparagraphs 108 and 114 of her petition that Respondent Palmer altered her work and conspired with other Respondents to subject her to a surprise hearing at which she was physically assaulted and falsely accused. However, as Judge Ambrose determined in <u>Cindrich 2007</u>, these acts occurred years before Respondents' April 2005 notification of termination and were thus time barred under the Whistleblower Law's 180-day statute of limitations. More importantly, Respondents maintain, these acts do not establish any concrete facts showing these reports resulted in Cindrich's termination. We agree.

Further, Respondents contend that Cindrich's third amended petition in this Court fails to sufficiently allege that her 2003 reports, including those made to Judge Lucchino during the course of employment in March 2003, resulted in her April 2005 termination. Indeed, the evidence submitted by the parties does not provide any concrete facts showing these reports resulted in Cindrich's termination. <u>See</u> Pet'r's Third Am. Pet. for Review, ¶16, sub¶¶116-199.

In Paragraph 16, Subparagraph 151, Cindrich avers (with emphasis added):

23

> (151) The Western Regional Office of the Attorney General had a notorious disregard of the office hours and leave policy. Employees favored by Respondent Minahan, reported for work late, left early and abused the leave policy. … One Friday afternoon, most of the Office was at the local bar for an office event without submitting leave slips. [Cindrich] put in a leave slip for an early dismissal, but did not attend the bar. <u>Upon information and belief, Respondent Palmer used this leave to substantiate Petitioner's termination in retaliation for her Whistleblower Report to Judge Lucchino.</u>

Pet'r's Third Am. Pet. for Review, ¶16, sub¶151. Nonetheless, although Cindrich avers that "upon information and belief" she believes Respondent Palmer "used this leave" to substantiate her termination in retaliation for her whistleblower report to Judge Lucchino, this vague allegation clearly does not set forth any concrete facts or circumstances sufficient to establish a credible causal connection between her filing of the report in 2003 and her termination two years later in April 2005. <u>Golaschevsky</u>; <u>Evans</u>; <u>Gray</u>. Further, Cindrich, who was not present at the alleged Friday gathering "at the local bar," cites to no concrete evidence in either her pleadings or briefs to support her "belief" that Respondent Palmer planned her ultimate discharge in retaliation for her 2003 whistleblower report to Judge Lucchino.

In stark contrast to Cinrich's bald assertion of "information and belief," Respondents' detailed offer of proof clearly explains that Respondent Corbett, the Attorney General at the time of Cindrich's discharge, terminated Cindrich's employment based on her insubordinate, disrespectful and disruptive actions and behavior. In particular, Respondent Corbett cited Cindrich's conduct in 2004-2005 while handling <u>Boring</u>. In an unsworn declaration, admitted into evidence by Judge

24

Ambrose as Defendants' Exhibit 93, Respondent Corbett explained the facts and circumstances leading to his decision to terminate Cindrich's employment with the OAG. This declaration, made subject to the penalties of perjury under federal law, provides, with emphasis added:

> 1. On January 18, 2005, I was sworn into office as the Attorney General of Pennsylvania.
>
> 2. After approximately two months in office, I was alerted to a problem involving one of the attorneys in the Charitable Trusts and Organizations Section of the Office of Attorney General. That attorney was Senior Deputy Attorney General Rita Cindrich.
>
> 3. Sometime during March of 2005, but prior to March 24, 2005, I received a file containing documents which illustrated the circumstances surrounding the difficulties Ms. Cindrich's supervisors were having with her. Copies of the documents contained in the file are attached to this declaration as Attachment A.
>
> 4. I reviewed these documents carefully. The handwritten notations found on many of the pages are mine. …
>
> 5. The clear sense I had from my review of this file was that Ms. Cindrich was acting against the direction of her supervisors, was acting disrespectfully, and was consuming a disproportionate amount of management time.
>
> 6. On March 24, 2005, I met with First Deputy Attorney General William Ryan, Chief of Staff Brian Nutt, Director of the Public Protection Division Alexis Barbieri (by speakerphone), Chief of the Charitable Trusts and Organizations Section Mark Parcella, Director of Human Resources Bruce Sarteschi, and Senior Deputy Attorney General Dan Doyle to discuss Ms. Cindrich.

25

7. By the end of that meeting, I had decided to terminate Ms. Cindrich's employment with the Office of Attorney General.

8. This was not an easy decision for me to make. Ms. Cindrich is the sister of Robert Cindrich, an individual I consider to be a friend and role model. … Consequently, the decision to terminate his sister's employment was a difficult one.

9. My decision was made for the following reasons. <u>First, Ms. Cindrich had filed a document in Somerset County, Pennsylvania that Mr. Pacella had repeatedly told her not to file. She also had refused to identify a trust officer whose identity Mr. Pacella had sought so that he could verify information Ms. Cindrich had conveyed to him. I cannot have attorneys working for this office who do not follow the direction of their supervisors and who make court filings when they are unequivocally directed not to do so</u>.

<u>Second, the language used by Ms. Cindrich over a period of years and which was directed at her immediate supervisor, Larry Palmer and, to some extent, at Mr. Pacella, was disrespectful, dismissive, rude, and entirely inappropriate in my view. I would not have tolerated such language from a direct subordinate of mine and I could not expect Mr. Palmer or Mr. Pacella to tolerate it from Ms. Cindrich</u>.

<u>Third, it was clear that Ms. Cindrich was disrupting the operation of the Charitable Trusts and Organizations Section. The volume of e-mails on one case alone made it clear that she was demanding an inordinate amount of management time and I believed the time could be more effectively spent if Ms. Cindrich was not in the office</u>.

10. I am aware that, in this lawsuit, Ms. Cindrich is claiming that she was terminated because she spoke out on matters of public concern and because she was a whistleblower. I know nothing about the details of the matter pending in Somerset County and my review of the file provided to me did not help me understand what her

26

concerns were.  I did not terminate her because of what she said in her court filing in Somerset County – I terminated her employment because of her insubordinate, disrespectful and disruptive behavior.

11. Had Ms. Cindrich felt the direction she was given by Mr. Pacella in the case pending in Somerset County was improper, her recourse was to go to Ms. Barbieri with her concerns.  If Ms. Barbieri concurred with Mr. Pacella, Ms. Cindrich could take her concerns to Mr. Ryan and, if Ms. Cindrich was still dissatisfied, she could bring them to me.  Under no circumstances was she entitled to act on her own authority in opposition to what she was directed to do.

12. Although my decision to terminate Ms. Cindrich was made on March 24, 2005, she was not told until April 1, 2005, because I wanted to tell Robert Cindrich of my action at the same time and I could not schedule my meeting with Mr. Cindrich until April 1st.

Defendants' Ex. 93 (Resp'ts' Summ. J. Br., App.)

Respondents assert the information utilized by Respondent Corbett to terminate Cindrich came from Cindrich's last year of employment during 2004-2005.  Therefore, they contend Cindrich's whistleblower reports made during 2000-2003 played no role in Respondent Corbett's decision to terminate her employment.

The many exhibits in the record corroborate this assertion.  For example, the emails submitted by Respondents in Defendants' Exhibits 131, 132 and 133 regarding Cindrich's inappropriate actions in Boring, including her refusal to comply with her supervisors' instructions not to make any further filings in the case, and her refusal to provide the name of the trust officer as requested by her supervisor,

27

clearly support Respondent Corbett's determinations as to Cindrich's insubordination.

Further, a March 9, 2005 memorandum from Respondent Pacella to Respondent Barbieri, submitted into evidence as Defendants' Exhibit 134, summarizes Cindrich's insubordinate actions and requests that immediate disciplinary action be taken against her. Respondent Pacella set forth the following four grounds for disciplinary action:

> 1. SDAG Palmer reported that <u>on February 15, 2005, at approximately 1:20 p.m., [Cindrich] physically pushed her way past him into his office to retrieve our case file, despite [Palmer's] instruction to stop, that he was not finished with his review, and that he would return the file once he was done with it</u>. DAG Herne was present at the time and witnessed the incident with several legal interns who had gathered for lunch. … It is my impression that this incident is well known throughout the western regional office. ….
>
> 2. <u>[Cindrich's] reactions to my instructions as a supervisor have become particularly sharp, argumentative and disrespectful</u>. …
>
> 3. <u>[Cindrich] failed to follow through on my express directive to disclose the identity and contact information of a trust officer she said she spoke with regarding this case</u>.
>
> 4. <u>[Cindrich] deliberately contradicted my direct, unambiguous and repeated directives not to take any further action in this case, and most importantly, not to file any amended objections unless expressly authorized by SDAG Palmer or myself</u>. ….

Defendants' Ex. 134 at 1-2 (emphasis added). Summarizing, Respondent Pacella stated:

> In short, [Cindrich] has become impossible to supervise in this case. She has refused to accept the opinions and views of her supervisors and refused to accept any suggestion of shortcomings in her own performance. Consistent with our experience in *Laubauch* and *Nossen*, she is convinced that she was purposely provided with materially altered documents, misinformation and/or been the victim of an intentional effort to embarrass or harass her. As before, I see no merit in any of her allegations.
>
> Moreover, I am concerned that [Cindrich's] actions may expose the office to liability claims. … Please note that absent contrary instructions, I intend to remove [Cindrich] from this case and withdraw her amended objections. I hope these actions will serve as mitigating factors against the potential of any such claims.
>
> For all of the reasons set forth above, I recommend that disciplinary action be taken as soon as possible. Please advise should you need any additional information regarding this matter.

Id. at 2-3 (footnote omitted, emphasis added). Respondent Pacella's memorandum to Respondent Barbieri is supported by further emails submitted into evidence. See Defendants' Exs. 135-142.

Notably, nowhere in Respondent Pacella's memorandum is there any direct reference to Cindrich's 2003 reports to Judge Lucchino or any other authorities.[9]

---

[9] Although Pacella's memorandum mentions the Laubauch and Nossen cases, Pacella merely notes that Cindrich's allegations of harassment and being provided misinformation and materially-altered documents appear meritless; there is no mention of any whistleblower reports.

Thus, our intense and independent review of the record indicates there is insufficient evidence to establish a causal connection between Cindrich's pre-2004 whistleblower reports and the April 1, 2005 notification of termination. Therefore, we discern no genuine issue of material fact upon which a fact-finder could properly find that Respondents terminated Cindrich's employment in April 2005 in retaliation for her pre-2004 whistleblower claims. Consequently, we dismiss Cindrich's remaining Whistleblower Law claim as meritless. Evans; Gray.

### 5. Declaratory, Injunctive Relief, Mandamus (Count Seven)

In Count Seven, Cindrich seeks a declaratory judgment, injunctive relief, or an order in mandamus compelling the OAG to reinstate her employment with back pay, leave, health insurance, all benefits, medical costs, and attorney fees. See Pet'r's Third Am. Pet. for Review at ¶150. Cindrich also seeks an order compelling the State Employees' Retirement Board to honor unspecified contractual rights established upon her retirement from public service. Id. at ¶151.

First, we recognize that a party seeking either mandamus or injunctive relief must establish that her right to relief is clear. Unified Sportsmen. As discussed above, Cindrich failed to establish a clear legal right to any of the relief she requested. As such, Cindrich cannot meet her threshold burden for either mandamus or injunctive relief.

Similarly, a party seeking relief under the Declaratory Judgments Act, 42 Pa. C.S. §§7531-7541, must establish that her rights or other legal relations are affected by a statute or a contract; she may then be entitled to a declaration of her rights or legal relations thereunder. Unified Sportsmen. Here, Cindrich did not offer proof that her rights were affected by a statute or by a binding contract. Indeed, no contract was attached to Cindrich's third amended petition for review. Therefore, she has not offered proof which would raise a disputed issue of material fact in support of declaratory relief.

In addition, we also note that Cindrich requests that her name be cleared and that this Court set aside one or more contempt orders issued against her by the Allegheny County Court in 2003, apparently for reasons related to her actions or conduct in cases assigned to her at that time. However, such relief is simply unavailable at this time. Cindrich's proper remedy would have been to timely appeal the contempt orders. A contempt order cannot be collaterally attacked in a later proceeding. Weiner v. Lee, 669 A.2d 424 (Pa. Cmwlth. 1995). Therefore, this Court lacks the authority to reverse or set aside any contempt orders issued against Cindrich by the Allegheny County Court in 2003. Id.

**6. Summary Judgment Granted**

As discussed above, Cindrich's claims for defamation, civil conspiracy and intentional infliction of emotional distress in Counts Four, Five and Six of her third amended petition for review in this Court were addressed and rejected on the merits by the Western District in Cindrich 2007. Therefore, these claims are barred under the doctrine of *res judicata*. Bell; Unified Sportsmen. Cindrich's First

31

Amendment claims in Counts Two and Three of her third amended petition for review in this Court were addressed and rejected on the merits by the Middle District in Cindrich 2006 and by the Western District in Cindrich 2007. These claims are barred by collateral estoppel rather than technical *res judicata* because not all of the Respondents in Cindrich 2007 were named defendants in Cindrich 2006. Bell; Unified Sportsmen.

In addition, in Cindrich 2007 the Western District addressed and rejected all of Cindrich's Whistleblower Law claims, with the exception of Cindrich's retaliation claim for her discharge allegedly based on her pre-2004 whistleblower claims. As such, those claims raised in Count One of Cindrich's third amended petition for review are barred by *res judicata*. Bell; Unified Sportsmen.

Finally, as to Cindrich's remaining Whistleblower Law claim, we hold Cindrich failed to offer proof beyond "information and belief" that Respondents terminated her employment in April 2005 in retaliation for her pre-2004 whistleblower claims. Thus, she failed to present any genuine issues of material fact with regard to that claim.

### III. Conclusion

We acknowledge Cindrich's strong feelings about the last years and termination of her OAG employment. Nevertheless, we must conclude that she was afforded much time in this litigation under the discerning watch of thoughtful jurists. Beyond her verbose and unfocused pleadings, she has been unable to identify useful offers of concrete evidence on her own behalf. Accordingly, we are constrained to

grant Respondents' motion for summary judgment, to deny Cindrich's cross-motion for summary judgment, and to dismiss her third amended petition for review with prejudice.


_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rita J. Cindrich,                                          :
                        Petitioner     :
                                :

          v.                                              :     No. 440 M.D. 2010
                                :

Michael Fisher, former Attorney                            :
General, individually and in his                           :
official capacity; Gerald J. Pappert,                       :
former Acting Attorney General,                            :
individually and in his official capacity;    :
Thomas W.Corbett, Jr., Attorney                            :
General, individually and in his official     :
capacity; Donald P. Minahan, former                        :
Executive Deputy Attorney General,                         :
individually and in his official capacity;    :
Alexis L. Barbieri, Executive Deputy                       :
Attorney General, individually and in                      :
her official capacity; Mark A. Pacella,                     :
Chief Deputy Attorney General,                             :
individually and in his official capacity;    :
Thomas L. Palmer, former Attorney- In-        :
Charge, individually and in his official                   :
capacity; Bruce R. Sarteschi, Director                     :
of Human Resources, individually and                       :
in his official capacity,                                  :
                        Respondents   :

## O R D E R

        **AND NOW**, this 25th day of October, 2017, for the reasons stated in the foregoing opinion, Respondents' Application for Summary Relief in the form of a Motion for Summary Judgment is **GRANTED**; Petitioner's Application for Summary Relief in the form of a Motion for Summary Judgment is **DENIED**; and Petitioner's Third Amended Petition for Review is **DISMISSED with PREJUDICE**.

                                                _____
                                                ROBERT SIMPSON, Judge